No. 78–188. MELLON BANK, N. A. v. SOUTHLAND MOBILE HOMES OF SOUTH CAROLINA, INC., ET AL. Sup. Ct. S. C. Certiorari denied.

MR. JUSTICE BLACKMUN, dissenting.

This case raises a substantial issue concerning state-court venue of a transitory cause of action asserted against a national bank. For me, the issue merits plenary consideration, and I dissent from the Court's denial of certiorari insofar as the case concerns one of the two respondents.

Petitioner Mellon Bank, N. A., is a national banking association with principal place of business in Pittsburgh, Pa. In 1972, respondent Associates Financial Services Company, Inc., and Mellon executed an agreement under which Associates was to seek out mobile-home dealers whose time-sale contracts for retail sales of mobile homes could be financed by Mellon. Respondent Southland Mobile Homes of South Carolina, Inc., operated mobile-home retail sales lots in the State of South Carolina and was induced by Associates to enter Mellon's mobile-home service program. As a consequence, Mellon directly financed a number of Southland's sales. The program provided for Mellon's release to Southland of something less than the full purchase price of any mobile home so sold, with the balance to be held in reserve for six months, after which only a 2% contingency fund was retained. At Southland's request, the total reserve later was limited to $20,000 in return for a personal guarantee from Southland's president and other security.

Southland subsequently instituted in the Court of Common

Pleas for Sumter County, S. C., this breach-of-contract action against both Mellon and Associates. The latter answered and filed a cross-complaint against Mellon. Mellon, by special appearance as allowed by state law, challenged the state court's jurisdiction over it on the grounds that it was "located" in Allegheny County, Pa., and that, under Rev. Stat. § 5198, 12 U. S. C. § 94,[1] a state-court suit against it could be brought only in Allegheny County.[2] The court, however, ruled that it had jurisdiction over Mellon. It concluded that branch banking for the benefit of Mellon was taking place at Associates' office; that South Carolina's long-arm statute, S. C. Code § 36-2-803 (1977), applied; and that Mellon by its conduct had waived any immunity from suit in South Carolina it may have possessed.

Mellon appealed to the Supreme Court of South Carolina. In an opinion concerning Associates, 270 S. C. 527, 244 S. E. 2d 212 (1978), that court, without considering waiver, affirmed.[3]

---

[1] "Suits, actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

[2] A supporting affidavit from an officer of Mellon recited that Mellon maintained no office in South Carolina; that there were no employees or agents of Mellon, or of a subsidiary or affiliate, in that State; that Mellon purchased commercial paper from financial institutions throughout the country; and that Associates was one of those institutions.

[3] In a separate opinion concerning Southland, 270 S. C. 525, 244 S. E. 2d 211 (1978), the court ruled that, although there was timely notice of intention to appeal, service upon Southland of the "proposed case and exceptions" was untimely under S. C. Code § 18-9-70 (1976) and Circuit Court Rule 49, and it therefore "was the duty of the circuit judge to dismiss the appeal." The plausible argument that this untimeliness feature provides an adequate state ground for the court's decision is sufficient to convince me that the case with respect to respondent Southland is nonreviewable. See R. Stern & E. Gressman, Supreme Court Practice § 3.31 (5th ed. 1978). No claim of untimeliness, however, is raised with respect to Associates.

The proliferation of branch banking has produced problems of state-court venue with respect to national banks not envisioned when § 94's predecessor statutes were enacted more than a century ago. Just last Term we considered the application of § 94 to a bank's conduct of banking business at an authorized branch within the State of its "location," and held that venue need not be restricted to the county where the bank's charter had been issued. *Citizens & Southern Nat. Bank* v. *Bougas,* 434 U. S. 35 (1977). And the Court recently held that § 94 was mandatory, not permissive, in its operation and, absent waiver, that a national bank with principal place of business in New York and with no office or agent in Utah, and not regularly conducting business in that State, could not be sued in a Utah state court for breach of contract. *National Bank* v. *Associates of Obstetrics,* 425 U. S. 460 (1976). See also *Mercantile Nat. Bank* v. *Langdeau,* 371 U. S. 555 (1963), and *Michigan Nat. Bank* v. *Robertson,* 372 U. S. 591 (1963). The latter case on its facts is not dissimilar to the present one, for it concerned notes and lien instruments delivered to a local dealer upon purchases of house trailers in Nebraska, followed by the dealer's negotiating the notes and instruments to a national bank in Michigan. The Court held that, absent waiver, the bank could not be sued in Nebraska. See *Bank of America* v. *Whitney Bank,* 261 U. S. 171 (1923), and *First Nat. Bank* v. *Dickinson,* 396 U. S. 122 (1969).

Whether, as the South Carolina courts held, Associates was Mellon's agent in South Carolina and, as a consequence, Mellon was engaged in branch banking in that State to an extent sufficient to sustain venue there under § 94 is, for this Court at least, a new issue. I think that issue is sufficiently important for national banks generally, and for those doing business with national banks or in competition with them, that it receive plenary consideration here. The South Carolina courts, of course, may be correct in their rulings, but I am uncertain enough about their result in the light of this Court's

cases cited above that I would grant certiorari. I therefore dissent from the Court's refusal to take this case.