The CONNECTICUT NATIONAL BANK d/b/a Shawmut Bank of Rhode Island, formerly known as People's Bank, N.A., Plaintiff,

v.

E. Paul IACONO, Brendan P. Smith, Hugh J. Vaughan, and Leo J. Raymond Jr., Defendants.

Civ.A. No. 91–0530L.

United States District Court, D. Rhode Island.

Feb. 28, 1992.

Douglas J. Rose, McGovern, Noel, Falk, Pannone, Procaccini & O'Leary, Ltd., Providence, R.I., for plaintiff.

John D. Deacon, Flanders & Medeiros, Providence, R.I., for defendants.

MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court on the motion of defendant Leo J. Raymond Jr. to dismiss the action for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1). Defendant Raymond is a resident of Rhode Island.[1] Plaintiff Connecticut National Bank ("CNB") is a federally chartered bank with its principal place of business in Hartford, Connecticut. In its complaint CNB states that this Court has jurisdiction based upon 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $50,000. Raymond challenges CNB's pleading of jurisdiction on the ground that CNB is a citizen of Rhode Island by virtue of its branch locations in Rhode Island, thereby destroying diversity of citizenship and precluding this Court from exercising jurisdiction over the case.

1. The Clerk has entered a default against each of the other three defendants, all Rhode Island

residents, for their failure to plead or appear.

For the reasons that follow, Raymond's motion to dismiss is granted.

## I. BACKGROUND

The present action arises from a loan issued to defendants on October 3, 1988, by People's Bank, N.A. ("People's"), a national banking association with its main office in Johnston, Rhode Island and branch offices throughout Rhode Island. Defendants failed to make payments on the promissory note as they became due, and CNB, the current holder of the note, brought suit to recover the balance. CNB became the holder of the note after Shawmut National Corporation, the bank holding company that owned both People's and CNB, effected a complex merger to reorganize its holdings. As a result of the reorganization the offices of People's (renamed Shawmut Bank of Rhode Island in 1990) operate as branches of CNB in Rhode Island.

The issue before the Court is whether a national banking association is a citizen of the state in which it operates its branch offices or, as CNB contends, only where it maintains its principal place of business. After having heard arguments on the motion for dismissal, the Court took the matter under advisement. The motion is now in order for decision.

## II. DISCUSSION

■ National banking associations have been granted limited access to federal courts by virtue of the following statute:

The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association *established* in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.

*All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.*

28 U.S.C. § 1348 (1988) (emphasis added). The purpose of § 1348 is to preclude a national banking association from claiming jurisdiction in the federal courts *solely* on the basis of its national charter. *Burns v. American Nat'l Bank & Trust Co.*, 479 F.2d 26, 27 (8th Cir.1973). If, however, a national bank can establish diversity of citizenship between the parties, as well as the required amount in controversy, then a federal court may entertain the action. 28 U.S.C. § 1332 (1988).

Whereas § 1332(c)(1) explicitly delineates the citizenship of a corporation, § 1348 fails to clarify the citizenship of a national banking association. As one court stated, "[f]or jurisdictional purposes, a national bank is a 'citizen' of the state in which it is *established or located,* [28 U.S.C. § 1348)....*" *Cope v. Anderson*, 331 U.S. 461, 467, 67 S.Ct. 1340, 1343, 91 L.Ed. 1602 (1947) (emphasis added). It is undisputed that a national banking association is a citizen of the state in which it maintains its principal place of business. *Lee Constr. Co. v. Federal Reserve Bank*, 558 F.Supp. 165, 170 (D.Md.1982); *Landmark Tower Assocs. v. First Nat'l Bank*, 439 F.Supp. 195, 196 (S.D.Fla.1977). Whether a national banking association can also be deemed a citizen of the state in which its branch offices are "located" is an issue that has rarely been discussed.

One case that has addressed this issue is *American Surety Co. v. Bank of California*, 44 F.Supp. 81 (D.Or.1941), *aff'd*, 133 F.2d 160 (9th Cir.1943). In *American Surety Co.* the defendant bank maintained branch offices in Oregon, where one of the plaintiffs resided. The bank contended that there was no diversity between the parties because both were citizens of Oregon. The District Court disagreed, holding that the bank was not a citizen of Oregon. 44 F.Supp. at 83. Analogizing the citizenship of a national banking association to that of a national corporation, the District Court stated that "a national bank should be considered as a citizen of the state where it has its principal place of business,

irrespective of the fact that it has authorized branches in other states." *Id.* Accordingly, the District Court found that diversity jurisdiction existed. *Id.*

Although *American Surety Co.* appears to have settled the matter in 1943, this Court is not content to rely upon that holding because of an important Supreme Court decision in 1977 and a subsequent revision in the law regarding national banking associations.

Before 1982 the following statute governed venue in actions against national banking associations:

> Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district *in which such association may be established,* or in any State, county, or municipal court in the county or city *in which said association is located* having jurisdiction in similar cases.

12 U.S.C. § 94 (1982), *amended by* 12 U.S.C. § 94 (1988) (emphasis added). The federal courts universally agreed that a national banking association was "established" for federal-court venue purposes only at the place designated in its charter. *See Northside Iron & Metal Co. v. Dobson & Johnson, Inc.,* 480 F.2d 798, 799–800 (5th Cir.1973); *First Nat'l Bank v. United States Dist. Ct. for Cent. Dist. of Cal.,* 468 F.2d 180, 183 (9th Cir.1972); *United States Nat'l Bank v. Hill,* 434 F.2d 1019, 1020 (9th Cir.1970); *Buffum v. Chase Nat'l Bank,* 192 F.2d 58, 60 (7th Cir.1951), *cert. denied,* 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702 (1952); *Leonardi v. Chase Nat'l Bank,* 81 F.2d 19, 22 (2d Cir.), *cert. denied,* 298 U.S. 677, 56 S.Ct. 941, 80 L.Ed. 1398 (1936). The state courts, however, had reached differing conclusions regarding where a national banking association was "located." Some state courts determined that "established" and "located" were functionally synonymous, both terms indicating the principal place of business designated in the bank's charter. *See Ebeling v. Continental Ill. Nat'l Bank & Trust Co.,* 272 Cal.App.2d 724, 726–27, 77 Cal.Rptr. 612, 615 (1969). Other state courts distinguished between the two words, holding that "established" meant only the place specified in the charter, whereas "located" meant anywhere that the bank maintained a branch office. *See Holson v. Gosnell,* 264 S.C. 619, 623, 216 S.E.2d 539, 540–41 (1975), *cert. denied,* 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636 (1976). Still other courts held that a national bank presumptively waived the restriction of § 94 by maintaining a branch office beyond its charter site, thereby permitting a plaintiff to bring suit where the branch was "located." *See Lapinsohn v. Lewis Charles, Inc.,* 212 Pa.Super. 185, 193, 240 A.2d 90, 94–95, *cert. denied sub nom. First Camden Nat'l Bank & Trust Co. v. Lapinsohn,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968).

The Supreme Court granted certiorari in *Citizens & Southern National Bank v. Bougas,* 434 U.S. 35, 98 S.Ct. 88, 54 L.Ed.2d 218 (1977), to resolve the inconsistencies among the state courts.[2] *Id.* at 37, 98 S.Ct. at 90. Considering the legislative history of § 94, the Court stressed that Congress could not have contemplated the modern system of banking, with its widespread branch offices, when it enacted the National Bank Act of 1864. *Id.* at 43, 98 S.Ct. at 93. Whereas "established" and "located" would have led to the same venue result in those early days, the Court recognized the distinction between the terms as they pertained to the modern system. *Id.* at 44, 98 S.Ct. at 93–94. Accordingly, the Court held that state-court venue was proper where the bank maintained an authorized branch, i.e., where the bank was "located." *Id.; see also First Nat'l Bank v. District Court, El Paso County, Colorado,* 653 P.2d 1123, 1125 (Colo.1982); *At-*

---

2. The *Bougas* Court declined to review the unanimous federal court holdings that a national bank was "established," for federal-court venue purposes, only at the place specified in the bank's charter, but the Court mentioned that this rule had been criticized by some scholars.

434 U.S. at 39, 98 S.Ct. at 91. In his concurring opinion Justice Stewart stated, "I have serious doubt that the cases so holding were correctly decided, and in any event this question remains an open one here." *Id.* at 46, 98 S.Ct. at 94 (Stewart, J., concurring).

*torney Gen. v. Industrial Nat'l Bank,* 380 Mass. 533, 534, 404 N.E.2d 1215, 1217 (1980).

In *Bougas* the Supreme Court noted the appearance of the word "located" in two other federal statutes pertaining to national banking associations, one being § 1348. 434 U.S. at 36 n. 1, 98 S.Ct. at 89 n. 1. This suggests that if the Supreme Court were constructing the word "located" as used in § 1348, it would probably find that a national banking association is "located" for diversity jurisdiction purposes in those states where it maintains its branch offices.[3] There are several considerations that support this premise.

First, prior to its revision in 1982, § 94 precluded a plaintiff from joining two or more defendant banks in federal court if the banks maintained their principal places of business in different districts. The Supreme Court recognized this dilemma as early as 1962 but stated that the matter should be left to Congress. *Mercantile Nat'l Bank v. Langdeau,* 371 U.S. 555, 563, 83 S.Ct. 520, 525, 9 L.Ed.2d 523 (1963). Congress subsequently revised § 94 as follows:

> Any action or proceeding against a national banking association for which the Federal Deposit Insurance Corporation has been appointed receiver, or against the Federal Deposit Insurance Corporation as receiver of such association, shall be brought in the district or territorial court of the United States held within the district *in which that association's principal place of business is located,* or, in the event any State, county, or municipal court has jurisdiction over such an action or proceeding, in such court in the county or city *in which that association's principal place of business is located.*

12 U.S.C. § 94 (1988) (emphasis added).[4] Section 94 now specifies that venue is proper only where the "association's *principal place of business* is located." Congress clearly intended to limit venue in this situation without raising any doubt as to where a national bank is "located." Section 1348, on the other hand, uses the word "located" without specifying that only the national bank's principal place of business shall be taken into account. This indicates that in enacting § 1348 Congress did not intend to limit the citizenship of a national banking association to only the state in which a bank maintains its principal place of business. If Congress had intended such a result, it would have appended "principal place of business" to "located" to remove any ambiguity, as in § 94.

Second, § 1348 uses the word "established" in its first paragraph and "located" in its second. As the Supreme Court recognized in *Bougas,* there is a distinction between the two terms. 434 U.S. at 44, 98 S.Ct. at 93–94. By using each term in a separate provision within one statute, Congress clearly intended to designate two different meanings. It has been generally accepted that "established" means the place where the bank has its principal place of business. *Id.* at 39, 98 S.Ct. at 91. By contrast, "located" in its most ordinary sense refers to those places where the bank maintains branch offices. *Id.* at 44, 98 S.Ct. at 93–94.

Finally, there are practical considerations for holding that a national banking association is "located" where the bank maintains branch offices. Because of the immense press of cases flooding the federal court system, there has been increasing interest in limiting diversity jurisdiction. *American Sur. Co.,* 44 F.Supp. at 83; *see also* 13B Charles A. Wright et al., *Federal*

---

**3.** The *Bougas* holding has been relied upon by one state court in deciding that a national bank with branch offices in South Carolina was a citizen of that state, subject to the jurisdiction of the state court pursuant to § 1348. *Southland Mobile Homes of S.C., Inc. v. Associates Fin. Servs. Co.,* 270 S.C. 527, 244 S.E.2d 212, 213–14, *cert. denied sub nom. Mellon Bank, N.A. v. Southland Mobile Homes of S.C., Inc.,* 439 U.S. 900, 99 S.Ct. 266, 58 L.Ed.2d 248 (1978).

**4.** As a result of this revision, all other actions against national banking associations are governed by the general venue statutes. S.Rep. No. 536, 97th Cong., 2d Sess. 28 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3054, 3082. In light of this change, *Bougas* affords little help in determining venue pursuant to § 94. Nevertheless, the *Bougas* Court's construction of "located" remains significant in this Court's analysis.

**34**

*Practice and Procedure* § 3601, at 352–54 (1984) (discussing five arguments in favor of eliminating diversity jurisdiction). Expanding the citizenship of national banking associations to include the locations of their branch offices serves to relieve some of the congestion in the federal courts.

■ For the foregoing reasons this Court concludes that Congress intended that a national banking association with branch offices in Rhode Island is to be regarded as a citizen of Rhode Island for jurisdictional purposes. Since both plaintiff and defendant Raymond are citizens of Rhode Island, diversity of citizenship does not exist in this matter. Therefore, this case must be dismissed for lack of subject matter jurisdiction.

### III. CONCLUSION AND ORDER

Accordingly, defendant Raymond's motion to dismiss is hereby granted. The Clerk will enter judgment forthwith, dismissing this case for lack of subject matter jurisdiction.

It is so ordered.