**FERRAIOLO CONSTRUCTION, INC.,** Ferraiolo Precast, Inc. d/b/a Ferraiolo Concrete Products Co., Inc., Plaintiffs,

v.

**KEYBANK, N.A. d/b/a Key Bank in Maine, KeyCorp, Defendants.**

Civ. No. 97–0080–B.

United States District Court, D. Maine.

Oct. 7, 1997.

**24**

Warren M. Silver, Warren M. Silver, P.A., Bangor, ME, for Plaintiffs.

Bruce B. Hochman, Lambert, Coffin, Rudman & Hochman, Portland, ME, for Defendants.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Defendants, KeyBank National Association ("KeyBank") and KeyCorp, move to dismiss this action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Plaintiffs, Ferraiolo Construction, Inc. and Ferraiolo Precast, Inc. d/b/a Ferraiolo Concrete Products Co., Inc. ·(collectively, "Ferraiolo"), allege that the basis for the Court's jurisdiction over this matter is diversity of citizenship under 28 U.S.C. § 1332. Defendants contend that complete diversity does not exist here. For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED.

1. The amount-in-controversy in this case exceeds $75,000.00 as required by 28 U.S.C. § 1332.

2. At the time this action was commenced, Defendant KeyBank was a wholly owned subsidiary of

## I. BACKGROUND

Plaintiffs commenced this action on April 29, 1997, alleging that Defendants negligently permitted Mr. Robert Calderwood, Sr. to deposit the proceeds of checks that Mr. Calderwood allegedly forged on Ferraiolo accounts into his personal account or accounts at KeyBank, and then permitted him to withdraw those funds. Plaintiffs further allege that KeyBank breached its contract with Ferraiolo by "accepting for payment and charging against the Ferraiolo account" certain of the aforesaid checks, in violation 11 M.R.S.A. § 4–401.

Plaintiffs base jurisdiction in this case on diversity of citizenship pursuant to 28 U.S.C. § 1332.[1] Plaintiffs contend that complete diversity exists in this case because both Plaintiffs are Maine corporations with their principal places of business in Rockland, Maine, Defendant KeyCorp is a bank holding company organized under the laws of Ohio with its principal place of business in Cleveland, Ohio, and Defendant KeyBank is a national banking association with its principal place of business in Cleveland, Ohio.[2] Defendants respond that complete diversity is absent in this case since KeyBank should be considered a citizen of Maine for jurisdictional purposes.

## II. DISCUSSION

For purposes of establishing diversity jurisdiction, citizenship is determined as of the date of the initiation of the lawsuit. See *Freeport–McMoRan, Inc. v. K.N. Energy, Inc.*, 498 U.S. 426, 428, 111 S.Ct. 858, 859, 112 L.Ed.2d 951 (1991); *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 59 n. 1 (1st Cir.1993). Any corporate consolidation which may have occurred after the filing of this action is irrelevant to a determination of whether or not jurisdiction exists. As the parties invoking the Court's subject matter jurisdiction, the burden of proof is on Plaintiffs. *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942), *Toste*

Key Bancshares of Maine, Inc., a Maine corporation that was itself a wholly owned subsidiary of Defendant KeyCorp. Def.'s Answers Interrogs. 1.

*Farm Corp. v. Hadbury, Inc.*, 70 F.3d 640, 642 (1st Cir.1995).

For diversity purposes, citizenship of a national banking association is governed by 28 U.S.C. § 1348, which provides in relevant part that "[a]ll national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively *located.*" (emphasis added). Plaintiffs claim that the term "located," as used in this provision, refers solely to the location of a national banking association's principal place of business. Defendants contend that, in addition to its principal place of business, a national banking association is "located" in, and thus a citizen of, every state in which it maintains branch banks.

The Court finds Defendants' interpretation persuasive. Several district courts have recently construed the meaning of "located" in section 1348, and held that a national banking association is a citizen not only of the state in which it maintains its principal place of business, but also of every state in which it maintains branch banks. *See Connecticut National Bank v. Iacono*, 785 F.Supp. 30, 31–32 (D.R.I.1992); *Bank of New York v. Bank of America*, 861 F.Supp. 225, 231 (S.D.N.Y.1994); *Norwest Bank Minnesota N.A. v. Patton*, 924 F.Supp. 114, 115 (D.Colo. 1996); *Silver v. Bank Midwest N.A.*, Civ. A. No. 95–2579–EEO, 1996 WL 328737, at *2 (D.Kan.1996); *McHugh v. Westpac Banking Corp.* Nos. 93 C 3058, 93 C 3059, 1995 WL 243339, at *1 (N.D.Ill.1995). A few of these courts have expanded the scope of the term "located" further, and held that a national banking association is "located" in every state in which it maintains a substantial presence. *Bank of New York*, 861 F.Supp. at 231; *Minnesota, N.A. v. Patton*, 924 F.Supp. at 115; *McHugh v. Westpac Banking Corp.*, 1995 WL 243339, at *1.

In a leading case on this issue, *Connecticut National Bank v. Iacono*, 785 F.Supp. 30, 31–32 (D.R.I.1992), the court granted a defendant's motion to dismiss for lack of diversity jurisdiction where the plaintiff national bank's principal place of business was in Connecticut, but it maintained branch offices in Rhode Island where at least one of the defendants was a citizen. In analyzing the term "located" in section 1348, the *Iacono* court examined the Supreme Court's decision in *Citizens & Southern National Bank v. Bougas*, 434 U.S. 35, 37, 98 S.Ct. 88, 89, 54 L.Ed.2d 218 (1977), where the Court considered the term "located" as used in 12 U.S.C. § 94, the provision governing venue in actions against national banking associations. At the time, section 94 restricted venue in a federal court action against a national banking association to the judicial district where the national bank was "established," and venue in a state court action against a national banking association to the county or city where the national bank was "located." The Court noted that while the terms "established" and "located" may have led to the same ultimate venue result before the advent of the modern "national banking system, replete with branches," the two words were not synonymous. *Id.* at 43–44, 98 S.Ct. at 92. Congress' concern in restricting venue in state court actions was "the untoward interruption of a national bank's business that might result from compelled production of bank records for distant litigation, . . . ." *Id.* at 44, 98 S.Ct. at 93. Since this concern largely disappeared with modern data processing and transportation, the Court held that a national banking association was "located," for venue purposes, wherever it maintained an authorized branch. *Id.*

The *Iacono* court applied the Supreme Court's definition of the term "located" in the former 12 U.S.C. § 94 to the term "located" in 28 U.S.C. § 1348 for several reasons. After *Bougas*, Congress revised section 94 to specify that venue in actions against national banking associations is only proper where the "association's principal place of business is located." 12 U.S.C. § 94. Plaintiffs contend that by revising section 94, Congress "statutorily overruled the Supreme Court's decision in *Bougas* . . . to clarify its intention that where a national banking association was 'located' referred to the bank's principal place of business." Pls.' Opp. Mot. Dismiss at 4. The Court, however, is persuaded by the reasoning of the *Iacono* court which held that the revision indicates Congress' clear intention "to limit venue . . . without raising

any doubt as to where a national bank is located." *Iacono,* 785 F.Supp. at 33; *see also Bank of New York,* 861 F.Supp. at 231 (the revision "indicates that Congress appreciated the *Bougas* holding and knew how to supplant it"). If Congress had intended to limit "located" in section 1348 to a national banking association's "principal place of business," it would have amended that provision just as it amended section 94. *Iacono,* 785 F.Supp. at 33; *see also Bank of New York,* 861 F.Supp. at 231 ("The fact that Congress did not similarly amend § 1348 suggests that it was prepared to accept the *Bougas* construction of 'located' for § 1348, particularly in view of the fact that *Bougas* expressly referenced that statute.").[3]

The *Iacono* court also noted that, as in the former section 94, section 1348 uses the word "established" in one paragraph, and "located" in the next paragraph. Since the Supreme Court expressly recognized the distinction between the two terms in *Bougas,* the court held that the two words should have different meanings in this provision as well. *Iacono,* 785 F.Supp. at 33.

The cases Plaintiffs cite in support of their more restrictive reading of the term "located" are not persuasive. First, while the court in *American Surety Co. v. Bank of California,* 133 F.2d 160, 161–62 (9th Cir. 1943) did hold that a national bank should only be considered a citizen of the state in which it maintains its principal place of business, this case was decided well before the Supreme Court's decision in *Bougas. See Iacono,* 785 F.Supp. at 32 (refusing to rely on *American Surety* in light of *Bougas* and the subsequent revision of 12 U.S.C. § 94).

Although Plaintiffs contend that courts have continued to interpret "located" as meaning "principal place of business" after *Bougas,* none of the cases that they cite address the specific issue of whether or not "located" in section 1348 includes states in which national banking associations maintain branch banks. For example, in *In re First National Bank of Boston,* 70 F.3d 1184, 1187–88 (11th Cir.1995), *vacated on other grounds,* 102 F.3d 1577 (11th Cir.1996), the

court held that where a defendant national bank stated its principal place of business in its removal notice, but failed to allege the state in which it was incorporated, the district court was incorrect to remand *sua sponte* for lack of diversity jurisdiction. The court found that the defendant's omission was irrelevant, since the national banking association did not have an incorporation state. *Id.* at 1188. Contrary to Plaintiffs' contentions, the court never directly addressed the issue of whether or not the term "located" in section 1348 includes branch banks. The court did state in a footnote that there was additionally no "evidence in the record [to justify remand] that Bank of Boston was *'located'* in Florida [where the plaintiff was a citizen] through a *branch office."* (emphasis added) *Id.* at 1188 n. 3. If anything, this footnote indicates that if the court had addressed the issue of the scope of "located," it would have found that the term includes branch offices.

Similarly, in *Provident Nat'l Bank v. California Fed. Savings & Loan Ass'n,* 624 F.Supp. 858, 861 (.D.Pa.1985), *aff'd on other grounds,* 819 F.2d 434 (3d Cir.1987), the court held that it had subject matter jurisdiction over an action brought by a plaintiff national banking association with its principal place of business in Pennsylvania, against a defendant federal savings and loan association, whose activities were localized in California. The court did not discuss whether or not the plaintiff national banking association could be considered a citizen of any other state under section 1348. Rather, the court analyzed the citizenship of the defendant under the standard for determining when a federal court has diversity jurisdiction over other federally chartered corporations. *Id.* at 861. The court held that since the defendant's business activity was localized in California, it was a citizen of California. *Id.* The other cases that Plaintiffs rely upon post–*Bougas* are similarly distinguishable. *See Loyola Fed. Savings Bank v. Fickling,* 58 F.3d 603, 606 (11th Cir.1995) (discussing citizenship of a federally chartered savings and loan association, not scope of the term "locat-

---

**3.** In *Bougas,* the Supreme Court expressly noted that the word "located" occurs in at least two

other federal statutes involving national banks, 28 U.S.C. § 1394, and 28 U.S.C. § 1348.

ed" in 28 U.S.C. § 1348); *Trent Realty Assocs. v. First Fed. Savings and Loan Ass'n,* 657 F.2d 29, 31 (3d Cir.1981) (same); *Lee Constr. Co. v. Federal Reserve Bank of Richmond,* 558 F.Supp. 165 (D.Md.1982) (holding that a "federally-chartered bank is a citizen of the state in which its principal place of business is located," without reaching the question of whether or not "located" in section 1348 also includes states in which a national banking association maintains branch banks).

■ The parties agree that, at a minimum, KeyBank maintains branch offices in Maine. *See* Pls.' Mot. Extension Time at 2. Thus, whether or not KeyBank's principal place of business is in Maine, KeyBank must be considered a citizen of Maine for jurisdictional purposes, frustrating complete diversity in this case. Even if the Court were to accept Plaintiffs' more limited construction of "located," however, this Court would still not have subject matter jurisdiction in this matter because the evidence suggests that KeyBank's principal place of business is also in Maine.

■ The First Circuit recognizes "three distinct, but not necessarily inconsistent tests" for determining a corporation's principal place of business: (1) the "nerve center" test, which searches for the location from which the activities of the corporation are controlled and directed; (2) the "center of corporate activity" test, which focuses on where the corporation's day-to-day management takes place; and (3) the "locus of the operations of the corporation" test, which searches for where the bulk of the corporation's actual physical operations are located. *Taber Partners, I v. Merit Builders, Inc.,* 987 F.2d 57, 61 (1st Cir.1993) (citing *Topp v. CompAir Inc.,* 814 F.2d 830, 834 (1st Cir. 1987)).

■ Plaintiffs contend that the "nerve center" test is the most appropriate one for this situation. The Court disagrees. The "nerve center" test "was developed for application in cases involving a large corporate enterprise with complex and farflung activities where only the 'nerve center' can be termed the principal place of business." *de Walker v.*

*Pueblo Int'l Inc.,* 569 F.2d 1169, 1172 (1st Cir.1978).

At the time Plaintiffs filed this suit, KeyBank was not a "large corporate enterprise with complex and farflung activities." Indeed, KeyBank is the former Key Bank of Maine which, on January 13, 1997, received authorization from the Office of the Comptroller of the Currency to commence business as a national banking association. Def.'s Answers Interrogs. 1. Up to and including the date this action was commenced, KeyBank's headquarters and all of its "approximately 90 branches" were located within the State of Maine. Defs.' Mot. Dismiss at 3. KeyBank's grandparent corporation, KeyCorp, does own a number of banks also named KeyBank National Association which conduct business in several other states, Def.'s Answers Interrogs. 11; however, any alleged consolidation of these various KeyBank National Associations into a unitary KeyBank National Association occurred after the date this lawsuit was filed, and is therefore irrelevant to a determination of whether or not diversity jurisdiction exists. As of the date this action was filed, KeyBank did not have operations in numerous states; rather, KeyBank's "location of operational predominance" was in Maine. *See Gulf Chemical Corp. v. Raytheon–Catalytic, Inc.,* 931 F.Supp. 955, 958 (D.P.R.1996) (" 'locus of operations' test is favored where there is, in fact, a location of operational predominance").

Under either of the two alternative tests for determining a corporation's principal place of business, the evidence indicates that when Plaintiffs filed this action, KeyBank's principal place of business was in Maine. First, Plaintiffs do not dispute that KeyBank's headquarters and all of its branches were located in Maine. Thus, under the "locus of the operations of the corporation" test, which focuses on the location of the bulk of KeyBank's actual physical operations, KeyBank should be considered a citizen of Maine. Second, Plaintiffs have not offered sufficient evidence to establish that the location of KeyBank's day-to-day management, the focus of the "center of corporate activity" test, was in Ohio rather than in Maine. While five out of six of KeyBank's directors

are located in Cleveland, Ohio (with the remaining member located in New York), Def.'s Answers Interrogs. 5, Plaintiffs have not presented evidence that indicates that these directors controlled the day-to-day management of KeyBank at the time this action was commenced. Defendants have also stated that the personnel who direct KeyBank's daily operations and/or make KeyBank's major policy decisions are located in Maine, New York, and Ohio, without specifying what decision-making authority lies in each state. Def.'s Answers Interrogs. 9. Given that KeyBank's locus of operations was in Maine when this action was filed, however, the possibility that some of the personnel in charge of KeyBank's day-to-day management might have been or might currently be located outside of Maine is insufficient to establish that KeyBank's "center of corporate activity" was in Ohio.

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED.

*SO ORDERED.*