United States Court of Appeals

Fifth Circuit

**F I L E D**

**October 5, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 03-50865

---

SARAH JENKINS HORTON;
GEORGE LEON MATASSARIN,

Plaintiffs-Counter Defendants-Appellants,

versus

BANK ONE, N.A.;

Defendant-Counter Claimant-Appellee,

BANK ONE CORPORATION;
BANK ONE WISCONSIN,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Western District of Texas

---

Before GARWOOD, HIGGINBOTHAM, and SMITH, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Sarah Jenkins Horton appeals the district court's rejection of her contention that for purposes of its diversity jurisdiction, a national bank is a citizen of each and every state in which it has a branch. We affirm.

I

The facts underlying this dispute involve a retail installment contract for the purchase of a vehicle by Horton. In 2002, Horton filed suit against Bank One in Texas state court alleging violations of several consumer-protection-type statutes

and asserting several common-law claims.  In February 2003, Horton sent a settlement offer to Bank One.  This offer put Bank One on notice for the first time that the amount in controversy exceeded $75,000.  Bank One immediately removed the case to federal district court.  Horton moved to remand arguing that there was no federal jurisdiction because complete diversity of citizenship was lacking.  Horton reasoned that, because Bank One had branches in Texas, it was "located" in Texas and was thus a citizen of Texas.  After rejecting Horton's reasoning and denying Horton's motion to remand, the district court granted her motion to certify the order for interlocutory appeal and we granted leave to appeal.  The specific issue certified for this appeal is whether national banking associations are citizens of every state in which they have a branch.

## II

We have jurisdiction[1] and we review *de novo* the district court's finding of jurisdiction.[2]

28 U.S.C. § 1348 provides that for purposes of diversity jurisdiction, "[a]ll national banking associations shall . . . be deemed citizens of the States in which they are respectively located."  We must decide the meaning of "located."  Horton

---

[1] *See* 28 U.S.C. § 1292(b).

[2] *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004).

2

argues that Bank One is a citizen Texas because it has branches in Texas, while Bank One claims that it is a citizen only of Illinois - the state of its principal place of business and the state listed in its organization certificate.

Until recently no circuit had addressed the meaning of "located" in section 1348. Prior to 1992, the "unquestioned" and "longstanding interpretation" was that "located" did *not* include the branches of a national bank.[3]

From 1992 to 2001, the majority of district courts that addressed this issue concluded that under section 1348, a national bank *is* a citizen of every state in which it has a branch,[4] led by the District of Rhode Island's opinion in *Connecticut National Bank v. Iacono*.[5] Pointing to a Supreme Court case in 1977 and changes in the law involving national banks, the court in *Iacono* decided to reexamine the meaning of "located," even though a 1943 case "appear[ed] to have settled the matter."[6] A minority of district courts, however, remained

---

[3] *Baker v. First Am. Nat'l Bank*, 111 F.Supp.2d 799, 800 (W.D. La. 2000); *see also Fin. Software Sys. v. First Union Nat'l Bank*, 84 F.Supp.2d 594, 602 (E.D. Pa. 1999).

[4] *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 985 (7th Cir. 2001).

[5] 785 F.Supp. 30 (D.R.I. 1992).

[6] *Id.* at 31–32.

3

unpersuaded by *Iacono*'s analysis and conclusion.[7]

In 2001, the Seventh Circuit in *Firstar* held that "for purposes of 28 U.S.C. § 1348 a national bank is 'located' in, and thus a citizen of, the state of its principal place of business and the state listed in its organization certificate."[8] *Firstar* analyzed the text, history, and purpose of section 1348 and its predecessors. While no other circuit has yet ruled on this issue, every district court that has since confronted it has agreed with *Firstar*.[9]

### III

We follow *Firstar*'s holding that a national bank is not "located" in, and thus not a citizen of, every state in which it has a branch.

### A

In construing another provision containing "located," the Supreme Court recognized that "[t]here is no enduring rigidity about the word 'located.'"[10] The language of section 1348 is

---

[7] *See, e.g.*, *Fin. Software Sys.*, 84 F.Supp.2d at 602-07; *Baker*, 111 F.Supp.2d at 800-01.

[8] *Firstar*, 253 F.3d at 994.

[9] *See, e.g.*, *Adams v. Bank of Am., N.A.*, 317 F.Supp.2d 935, 941-42 (S.D. Iowa 2004); *Evergreen Forest Prods. of Ga., LLC v. Bank of Am., N.A.*, 262 F.Supp.2d 1297, 1307 (M.D. Ala. 2003); *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 810 (N.D. Tex. 2002) (agreeing with "well-reasoned *Firstar Bank*-line" of cases).

[10] *Citizens & S. Nat'l Bank v. Bougas*, 98 S.Ct. 88, 93 (1977).

4

therefore ambiguous, and this court "will look to legislative history to clarify the purpose" of the statute.[11]

"When . . . judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well."[12]  Further, "courts presume that Congress will use clear language if it intends to alter an established understanding about what a law means; if Congress fails to do so, courts presume that the new statute has the same effect as the older version."[13]

B

*Firstar* found that the history of section 1348 and its predecessors makes plain Congress's intent to grant national banks and state banks and corporations equal access to diversity jurisdiction.[14]  When national banks were first created in 1863, federal courts had jurisdiction over any suit involving a

---

[11] *United Servs. Auto. Ass'n v. Perry*, 102 F.3d 144, 149 (5th Cir. 1996) (per curiam).

[12] *Bragdon v. Abbott*, 118 S.Ct. 2196, 2208 (1998).

[13] *Firstar*, 253 F.3d at 988 (citing *Cotton Sav. Ass'n v. Comm'r*, 111 S.Ct. 1503, 1508-09 (1991) (stating that by leaving a statute "undisturbed through subsequent reenactments of the [Act]," the Court "may presume that Congress intended to codify [the related] principles" represented by the Court's contemporary decisions)).

[14] *Firstar*, 253 F.3d at 988.

5

national bank.[15]  In 1864, Congress added that any such case could also be brought in state court.[16]

In 1882, however, Congress trimmed federal jurisdiction over cases involving national banks:

> [T]he jurisdiction for suits hereafter brought by or against any association established under any law providing for national-banking associations, except suits between them and the United States, or its officers and agents, shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States which do or might do banking business where such national-banking associations may be doing business when such suits may be begun . . . .[17]

The apparent purpose of the 1882 statute was to "eliminate automatic federal question jurisdiction over all cases involving national banks."[18]  In 1887, Congress superseded the 1882 Act and first used the phrase that appears today in section 1348.  The 1887 Act proclaimed:

> [A]ll national banking associations established under the laws of the United States shall, for the purposes of all actions by or against them, real, personal, or mixed, and all suits in equity, *be deemed citizens of the States in which they are respectively located*; and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between

---

[15] *Id.* at 986 (citing *Petri v. Commercial Nat'l Bank of Chicago*, 12 S.Ct. 325, 326 (1892)).

[16] *Petri*, 12 S.Ct. at 326.

[17] Act of July 12, 1882, ch. 290, § 4, 22 Stat. 162, 163 (emphasis added).

[18] *Fin. Software Sys.*, 84 F.Supp.2d at 600 (citing *Leather Mfrs.' Nat'l Bank v. Cooper*, 7 S.Ct. 777, 778 (1887)).

individual citizens of the same State.[19]

The Supreme Court has concluded that the objective of the 1882 and 1887 Acts was to create jurisdictional parity between national banks on the one hand and state banks and corporations on the other.  Interpreting the 1882 Act, the Supreme Court observed that it "was evidently intended to put national banks on the *same footing as the banks of the state* where they were located for all the purposes of the jurisdiction of the courts of the United States."[20]  For jurisdictional purposes, a national bank was placed "before the law . . . the same as a bank not organized under the laws of the United States."[21]

In the Judicial Code of 1911, Congress changed the structure of the jurisdictional provision of the 1887 Act, but retained its language regarding citizenship.[22]  The design of the change was merely "to make the purpose of the re-enacted statute clearer"

---

[19] Act of March 3, 1887, ch. 373, § 4, 24 Stat. 552, 554-55 (emphasis added).

[20] *Leather Mfrs.' Nat'l Bank*, 7 S.Ct. at 778 (emphasis added).

[21] *Id.; see also Mercantile Nat'l Bank v. Langdeau*, 83 S.Ct. 520, 526 (1963) ("Section 4 [of the 1882 Act] apparently sought to limit, with exceptions, the access of national banks to, and their suability in, the federal courts *to the same extent to which non-national banks are so limited*." (emphasis added)); *Petri*, 12 S.Ct. at 327 ("No reason is perceived why it should be held that congress intended that national banks should not resort to federal tribunals as other corporations and individual citizens might.").

[22] *Fin. Software Sys.*, 84 F.Supp.2d at 600.

rather than to make a fundamental change.[23]  Finally, in 1948

Congress amended the Judicial Code and enacted section 1348 in

its present form.[24]

It is then plain that Congress enacted section 1348 against

a backdrop of equal access to the federal courts for national

banks, state banks, and corporations.  Because section 1348 does

not have any language modifying or rejecting the interpretive

understanding that came with its predecessors, this court should

presume that Congress intended to retain and incorporate the

existing interpretive backdrop.[25]  It follows that we should read

section 1348 as retaining its objective of jurisdictional parity

for national banks vis-à-vis state banks and corporations.

C

We are persuaded that this goal of jurisdictional parity is

best served by interpreting "located" as referring to a national

bank's principal place of business as well as the state specified

in the bank's articles of association.[26]  Since a state bank,

---

[23] *Herrmann v. Edwards*, 35 S.Ct. 839, 842 (1915).  *See also Am. Sur. Co. v. Bank of Ca.*, 133 F.2d 160, 161-62 (9th Cir. 1943) (holding national bank with branch in Oregon was not citizen thereof for diversity purposes under predecessor of section 1348).

[24] *See* Act of June 25, 1948, ch. 646, 62 Stat. 933.

[25] *See Bragdon*, 118 S.Ct. at 2208; *Cotton Sav. Ass'n*, 111 S.Ct. at 1508-09.

[26] *Firstar* held that a national bank is located in, and therefore a citizen of, the state of its principal place of business and the state listed in its organization certificate.

8

under 28 U.S.C. § 1332(c)(1), may be a citizen of no more than two states – the state where its principal place of business is located and its state of incorporation – maintaining jurisdictional parity between a national and state bank requires that the national bank have no more than two possible states of citizenship.[27]

Horton's position – that the national bank would be located in, and therefore a citizen of, each state in which it has a branch – would restrict a national bank's access to federal court

---

*Firstar*, 253 F.3d at 994. The OCC filed an *amicus* brief in *Firstar*, as it has in this case. *Id.* at 984. Following *Firstar*, the OCC issued an interpretive letter reaffirming its support of "the interpretation of the statute and fundamental reasoning" of the *Firstar* court. OCC Interpretive Letter No. 952, 2002 WL 32072482, at *4 (Oct. 23, 2002).

The OCC, however, indicated that *Firstar's* "use of the state listed in the organization certificate as the analogue to the state of incorporation was incomplete" and that a more thorough articulation of the position would be that "a national bank is a citizen of the state in which its principal place of business is located and of the state that was originally designated in its organization certificate and articles of association or . . . the state to which that designation has been changed under other authority." *Id.*

In a recent case construing section 1348, a district court held "that a national bank is 'located' in, and thus a citizen of, the state of its principal place of business and the state listed in its most recent articles of association." *Evergreen*, 262 F.Supp.2d at 1307.

While the OCC's position and *Evergreen* do represent a more complete holding than that in *Firstar*, because Illinois is the state of Bank One's principal place of business, the state listed on its organization certificate, and the state listed in its most recent articles of association, it is not necessary to decide whether to use the "organization certificate" test or the "articles of association" test.

[27] *Firstar*, 253 F.3d at 993; *Evergreen*, 262 F.Supp.2d at 1307.

under diversity jurisdiction, without similarly restricting a state bank.

D

Horton accepts that parity was intended, but offers a quite different view of what that parity is.  Horton argues that Bank One does not seek the parity that Congress intended to achieve with the 1882 and 1887 Acts.  Horton points to *Mercantile National Bank v. Langdeau*, deciding venue in state courts for suits against national banks.[28]  In determining whether the jurisdictional provisions of the 1882 Act had implicitly repealed an earlier venue provision, the Supreme Court explained that "[s]ection 4 apparently sought to limit, with exceptions, the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks are so limited."[29]  In coming to this conclusion, the Court quoted from the Congressional Record:

> The proviso to § 4 of the 1882 Act first appeared as an amendment offered on the floor of the House by Representative Hammond, pursuant to the order of the House fixing the assignment of the bill H.R. 4167 as a special order.  See 13 Cong. Rec. 3900, 3901.  Mr. Hammond succinctly stated the purpose of his amendment as follows: "My amendment, therefore, declares that the jurisdictional limits for and as to a national bank shall be the same as they would be in regard to *a State bank actually doing or which might be doing business by its side; that they shall be one and the same.*"  13

---

[28] 83 S.Ct. at 521-22.

[29] *Id.* at 526.

10

Cong. Rec., at 4049.  Mr. Robinson then asked, "As I understand the gentleman's proposed amendment, it is simply to this effect, that *a national bank doing business within a certain State* shall be subject for all purposes of jurisdiction to precisely the same regulations to which *a State bank, if organized there*, would be subject."  Mr. Hammond replied, "That is all." Ibid.[30]

Horton argues that this quote from the Congressional Record evidences Congress's intent to treat national banks as citizens of the states in which they are "doing business," so that national banks would have jurisdictional parity within a particular state with the state banks chartered in that state. "Doing business within a certain State," according to Horton, includes the national bank's branches and would result in the national bank's being treated as a citizen of each state where it has a branch.  Horton asserts that this approach achieves the parity Congress intended: a state bank organized in Texas, being a Texas citizen, would not be able to invoke diversity jurisdiction in a suit against a Texas citizen; hence, a national bank located or doing business in Texas, but presumably with its principal place of business and organization certificate in another state, should also not be able to invoke diversity jurisdiction against a Texas citizen.

Horton's reading of history is incomplete.  At the time of the 1882 Act, indeed until 1927, national banks were not

_____

[30] *Id.* at 526 n.22 (emphasis added).

11

permitted to engage in branch banking - intrastate or interstate.[31]  Therefore, the statement from the Congressional Record is not evidence that "located," or "doing business within a certain State," means something more than principal place of business: all national banks in 1882 were doing business only in the state of their principal place of business.

Horton's position also ignores the Supreme Court's declarations that "[n]o reason is perceived why it should be held that congress intended that national banks should not resort to federal tribunals as other corporations" might,[32] and that "[a] national bank was by [the statute of 1882] placed before the law [for purposes of federal jurisdiction] the same as" non-national banks.[33]  A national bank with its principal place of business and organization certificate in Illinois could hardly be treated the same before the law if a corporation from Illinois with a "branch" in Texas could get into federal court when sued by a citizen of Texas while the national bank, also with a branch in Texas, could not.

Finally, Horton's position would lead to a narrow concept of "parity."  The national bank would enjoy access to diversity jurisdiction only when sued by or suing a citizen of a state in

---

[31] *Bougas*, 98 S.Ct. at 93; *Fin. Software Sys.*, 84 F.Supp.2d at 601-02.

[32] *Petri*, 12 S.Ct. at 327.

[33] *Leather Mfrs.' Nat'l Bank*, 7 S.Ct. at 778.

12

which the bank maintains no branch at all.  Corporations and state banks do not have such a limited access to federal court.

E

*Firstar* and other courts have addressed the arguments upon which the *Iacono* court relied and expressly rejected *Iacono*'s reasoning and conclusion.[34]  Horton does not attempt to resurrect any of these rejected *Iacono* arguments, citing *Iacono* only once - to argue that *Iacono* represents the majority view.

*Iacono* relied heavily on *Citizens & Southern National Bank v. Bougas*,[35] in which the Supreme Court read "located," for purposes of a venue provision of the National Banking Act to include the location of the bank's branches.[36]  *Bougas*, however, does not construe section 1348 and merely points out in a footnote, with no further comment, that section 1348 uses the word "located."  Because "[v]enue is distinct from jurisdiction,"[37] and because *Bougas* expressly limits its opinion to how the federal statute applied in determining state court

---

[34] *Firstar*, 253 F.3d at 989-93; *Fin. Software Sys.*, 84 F.Supp.2d at 604-07.

[35] 98 S.Ct. 88 (1977).

[36] *Iacono*, 785 F.Supp. at 32-34 (stating that *Bougas*'s mention of section 1348 suggested that the Supreme Could would construe "located" in section 1348 as is had in *Bougas*); *Bougas*, 98 S.Ct. at 89-94.

[37] *Driscoll v. New Orleans Steamboat Co.*, 633 F.2d 1158, 1159 n.1 (5th Cir. 1981).

venue, using *Bougas* to interpret "located" in a jurisdictional statute is of questionably validity, if applicable at all.[38]

*Iacono* also failed to recognize that the provision interpreted in *Bougas* was included in the National Banking Act,[39] and that section 1348 is found in the Judicial Code and Judiciary Act.[40] This undermines the rationale for using the venue provision construed by *Bougas* to aid in the interpretation of a jurisdictional statute, particularly when the same word can have different meanings - even within the same act.[41] *Bougas* itself recognized that "[t]here is no enduring rigidity about the word 'located,'" thus significantly weakening the interpretative applicability of the same word in a different act and in a different context.[42]

*Iacono* made an erroneous inference from a 1982 amendment to the venue provision.[43] Following *Bougas*'s holding that state court venue for a national bank could be in any county in which

---

[38] *Firstar*, 253 F.3d at 989-91.

[39] 12 U.S.C. § 21, *et seq.*

[40] 28 U.S.C. § 1, *et seq.; see also Firstar*, 253 F.3d at 990.

[41] *See Atl. Cleaners & Dyers v. United States*, 52 S.Ct. 607, 608-09 (1932) ("Most words have different shades of meaning, and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section.").

[42] *Bougas*, 98 S.Ct. at 93.

[43] *See* 12 U.S.C. § 94.

14

the bank had a branch, Congress amended the relevant venue provision to limit venue to the location of the bank's principal place of business.[44]  Congress, however, did not change section 1348 at that time.  This congressional inaction, according to *Iacono*, meant that Congress implicitly approved of the *Bougas* Court's definition of "located" for purposes of section 1348.[45]

However, "no basis exists for inferring that Congress intended for 'located' in 28 U.S.C. § 1348 to be interpreted in accord with *Bougas*."[46]  As *Firstar* observed, the venue and the jurisdiction statutes for national banks are found in different acts and serve distinct purposes.[47]  Further, there had been no cases prior to *Iacono* in 1992 suggesting that a national bank was a citizen of every state in which it had a branch.  We are unwilling to infer from Congress's inaction with respect to section 1348 any intent to accept the *Bougas* definition of "located."

In *Iacono*, the district court maintained that because section 1348 used both "established" and "located," Congress must have intended for the two words to have different meanings.[48]

---

[44] *Firstar*, 253 F.3d at 992.

[45] *Iacono*, 785 F.Supp. at 33.

[46] *Firstar*, 253 F.3d at 992.

[47] *Id.*

[48] *Iacono*, 785 F.Supp. at 33.

15

The court then explained that this supported the holding that "established" meant principal place of business while "located" meant where the bank had branches.[49]

While the *Iacono* interpretation seems reasonable, it does not take into account that when Congress enacted the predecessor of section 1348, "established" and "located" would have been functionally equivalent for jurisdictional purposes because national banks had no branches.[50] As we have explained, national banks were not permitted to have interstate branches at the time of the 1882 and 1887 Acts that serve as the backdrop for section 1348. It is then difficult to conclude that Congress intended for the two words to have the different meanings that the *Iacono* court suggests. In any case, where it is not clear that the two words were intended to have different meanings, "the words should reflect the congressional goal of jurisdictional parity with state banks and corporations" rather than a meaning that overrides this goal.[51]

F

Horton makes a number of additional arguments, including the following: (1) Texas law determines that Bank One is a Texas domiciliary, and thus a Texas citizen for diversity purposes; (2)

---

[49] *Id.*

[50] *See Fin. Software Sys.*, 84 F.Supp.2d at 604.

[51] *Id.*

16

since *Firstar*, the OCC has issued an interpretation of "located" that supports Horton's position; (3) certain sections in the National Banking Act use the term "located" to include location of branches; and (4) the *Firstar* result conflicts with Texas consumer protection laws and is bad policy.

The parties dispute which, if any, of these were properly raised before the district court. "[A]rguments not raised in the district court cannot be asserted for the first time on appeal."[52]  However, "an argument is not waived on appeal if the argument on the issue before the district court was sufficient to permit the district court to rule on it."[53]  Regardless of whether Horton sufficiently raised these additional arguments, they are without merit.

First, Horton argues that the *Firstar* analysis ignores state law and its impact on the scope of diversity jurisdiction and does not account for federalism concerns.  Horton specifically argues that under Texas law, Bank One is a Texas domiciliary and, therefore, cannot be diverse.  As the "determination of one's State Citizenship for diversity purposes is controlled by federal law, not by the law of any State," Texas law does not control

---

[52] *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 427 n.29 (5th Cir. 2002).

[53] *Id.*

here.[54]

Second, Horton claims that since the *Firstar* opinion, the OCC has changed its position.[55]  This argument lacks merit.  The Corporate Decision upon which Horton relies was issued *prior to* an Interpretative Letter[56] that reaffirmed OCC's agreement with *Firstar*.  Furthermore, the Corporate Decision concerns the location of national banks for purposes of *mergers* and does not purport to interpret section 1348 - or even refer to it.

Third, Horton points to portions of the National Banking Act that arguably deem a national bank to be located wherever it has branches; Horton contends that "located" in section 1348 must have the same meaning.  The OCC readily concedes that "[f]or some statutes a national bank may . . . be located in states in which it has branches."[57]  A "normal rule of statutory construction" is that "identical words used in different parts *of the same act* are intended to have the same meaning."[58]  This principle does not apply here, however, because the statutes cited by Horton are

---

[54] *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974).

[55] *See* OCC Corporate Decision No. 2001-29, 2001 WL 1502558 (Sept. 28, 2001).

[56] *See* OCC Interpretative Letter No. 952, 2002 WL 32072482 (Oct. 23, 2002).

[57] *Id.* at *3 n.8.

[58] *Gustafson v. Alloyd Co.*, 115 S.Ct. 1061, 1067 (1995) (emphasis added) (internal quotation marks and citations omitted).

18

from the National Banking Act while section 1348 is found in the Judicial Code.[59]  This argument also fails.

Finally, Horton argues that viewing "located" in a manner that increases the scope of federal diversity jurisdiction makes Texas consumer protection remedies "difficult or remote."  The rule, however, is that "[c]ontrol over the scope of diversity jurisdiction rests with Congress," and any related policy determinations are for Congress to make.[60]  Relatedly, state law does not determine the scope of federal diversity jurisdiction.[61] Horton's argument is, therefore, unavailing.

## IV

We construe section 1348 in light of Congress's intent to maintain jurisdictional parity between national banks on the one hand and state banks and corporations on the other.  We hold that the definition of "located" is limited to the national bank's principal place of business and the state listed in its organization certificate and its articles of association.  This results in a national bank's having access to federal courts by diversity jurisdiction to the same extent as a similarly situated state bank or corporation.  It follows that, under section 1348, a national bank is not necessarily "located" in each and every

---

[59] *Firstar*, 253 F.3d at 990.

[60] *Bianca v. Parke-Davis Pharm. Div. of Warner-Lambert Co.*, 723 F.2d 392, 396 & n.4 (5th Cir. 1984).

[61] *Mas*, 489 F.2d at 1399.

state in which it has a branch, and the district court did not err in so holding.

AFFIRMED.