John D. BAKER, et al.

v.

FIRST AMERICAN NATIONAL BANK.

No. 99–2202.

United States District Court, W.D. Louisiana.

June 27, 2000.

John M. Frazier, Armand L. Roos, Roos & Frazier, Shreveport, LA, for John D. Baker, plaintiff.

L. David Cromwell, Pettiette Armand et al., Shreveport, LA, for First American National Bank.

## ORDER

WALTER, District Judge.

For the reasons assigned in the Report and Recommendation of the Magistrate Judge previously filed herein, and having thoroughly reviewed the record and concurring with the findings of the Magistrate Judge under the applicable law;

**IT IS ORDERED** that the Motion to Dismiss (Doc. 6) is **DENIED**.

## REPORT AND RECOMMENDATION

PAYNE, United States Magistrate Judge.

### Introduction

Mrs. J.W. Baker and two of her sons filed this action demanding payment of a certificate of deposit ("CD") by the issuing bank. Before the court is the bank's Motion to Dismiss the case on the grounds that the claim has prescribed. For the reasons that follow, it is recommended that the motion be denied.

### Subject Matter Jurisdiction

■ This case was commenced in state court. The defendant, First American National Bank, operating as Deposit Guaranty National Bank, removed it on the alleged basis of diversity jurisdiction. The amount in controversy is sufficient. The plaintiffs are citizens of Louisiana, California and Maryland. The defendant is a national banking association organized under the laws of the United States with its principal place of business in Tennessee. Yet, there is a question about diversity. The plaintiffs have not raised the issue, but subject-matter jurisdiction cannot be waived and the court must always ascertain its existence, on its own motion if necessary. *Torres v. Southern Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir.1997).

For purposes of diversity jurisdiction in ordinary civil actions, a corporation created under state law is deemed a citizen of its state of incorporation and where its principal place of business is located. 28 U.S.C. § 1332(c). Citizenship of national banking associations is governed by a separate statute. It provides that national banks are "deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348. A few district court decisions, beginning with *Connecticut Nat'l Bank v. Iacono*, 785 F.Supp. 30, 31 (D.R.I. 1992), have held that a national bank is "located" in (and a citizen of) every state where it has a branch office. *See also Ferraiolo Construction, Inc. v. Keybank, N.A.*, 978 F.Supp. 23 (D.Maine 1997). That rule would defeat diversity jurisdiction in this case.

■ The undersigned finds more persuasive the traditional view that the term "located," as used in § 1348, must be confined to a bank's principal place of business. That longstanding interpretation, unquestioned until 1992, takes into consideration that when § 1348 was written national banks could not have interstate branches, avoids creating problems in the application of other banking laws that use the term "located," and is consistent with the Congressional intent that national banks be on the same jurisdictional playing field as state banks. If a national bank is deemed a citizen of every state where the bank opens a branch office, state banks will have greater access to the federal courts than federally chartered banks. These and other arguments in favor of the

traditional interpretation of the statute are set forth at length in *Financial Software Systems, Inc. v. First Union National Bank*, 84 F.Supp.2d 594 (E.D.Pa.1999). Accordingly, the bank is not a citizen of Louisiana merely by virtue of having a branch office in this state, and the court has jurisdiction.[1]

### Rule 12(b)(6) and Prescription Defenses

When addressing a motion to dismiss under F.R.C.P. 12(b)(6), the court must accept as true all facts pleaded in the complaint and liberally construe the allegations in favor of the plaintiff. *Lowrey v. Texas A & M University System*, 117 F.3d 242, 247 (5th Cir.1997). Although defenses are not usually the proper subject of a Rule 12(b)(6) motion, a statute of limitations defense may properly be asserted if it appears on the face of the complaint. *Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 776 n. 3 (5th Cir.1997); *Kansa Reinsurance v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1366 (5th Cir. 1994). With those principles in mind, the relevant facts are as follows.

### The Facts

Mrs. J.W. Baker is the named holder of a CD in the principal amount of $100,000 that was issued by Commercial National Bank in Shreveport and dated March 3, 1987. The CD provides that it is payable "to the order of Mrs. J.W. Baker in current funds on the return of this Certificate properly endorsed 90 days Days (sic) after date with interest at the rate of 5.75% per cent (sic) per annum." The CD further states that it matures on June 3, 1987 and that there shall be "[n]o interest after maturity." Finally, the CD features a notation, in all-capital letters that are at least as large as any other type in the text, that it is "NONTRANSFERABLE."

The CD may have been community property belonging to the community of Mrs. Baker and her late husband who died in 1991. Because Mr. and Mrs. Baker's two sons inherited their father's portion of the community, they joined Mrs. Baker in her efforts to collect payment of the CD. In April of 1999, the Bakers' lawyer wrote to Deposit Guaranty National Bank, the successor by merger to Commercial National Bank in Shreveport. He advised the bank of the Bakers' intent to present the CD for payment on April 19, 1999. The CD was in fact presented on that date, but the bank's attorney later wrote to the Bakers and advised that payment was refused.[2] This lawsuit followed.

### The Two Prescriptive Periods

Article 3498 of the Louisiana Civil Code provides that "actions on instruments, whether negotiable or not, and on promissory notes, whether negotiable or

1. After the case was removed, a bank merger caused the original defendant to be replaced by AmSouth Bank. That event had no effect on jurisdiction. *Freeport–McMoRan, Inc. v. K.N. Energy, Inc.*, 498 U.S. 426, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991).

2. The correspondence between the parties is not attached as an exhibit to the complaint, so may not be considered in deciding this Rule 12(b)(6) motion. *Compare* F.R.C.P. 10(c) (A "written instrument which is an exhibit to a pleading is a part thereof for all purposes.") That includes motions to dismiss. *Weatherford v. U.S.*, 957 F.Supp. 830, 832 (M.D.La. 1997). The noted correspondence is attached to a memorandum, which is not a pleading. F.R.C.P. 7(a). Although the correspondence is of no legal significance at this stage of the proceedings, it is worth mentioning, if for no other reason, to satisfy the natural curiosity of the reader about why the bank would refuse to honor a CD. The plaintiffs' lawyer advised the bank that Mrs. Baker had recently discovered the 1987 CD but could find no record that it was ever paid. He asked that the bank research its records to determine if a lost certificate affidavit was ever filed and to then advise what action the bank would take when the CD was presented. Bank counsel responded that the bank's books and records do not show the CD as an existing deposit for any years for which records are presently in existence. The passage of so much time, the large amount of the CD and the absence of the CD from the detailed descriptive list filed in Mr. Baker's succession caused the bank to conclude that the CD was either previously paid or renewed into some other deposit account.

not, are subject to a liberative prescription of five years." The Article adds that "this prescription commences to run from the day payment is exigible." The parties agree that payment was exigible when the CD matured on June 3, 1987. *See Crown Mortgage Corp. v. Carrico*, 606 So.2d 29 (La.App. 5th Cir.1992) (payment was exigible on a note on its due date). The plaintiffs even concede that "[i]f Article 3498 is applicable, [the bank] avoids payment." Memorandum in Opposition, p. 4.[3]

The plaintiffs argue that Article 3498 is inapplicable and that the relevant prescriptive period is provided in La.R.S. 10:3–118(e). That statute is part of Louisiana's version of Article 3 of the Uniform Commercial Code. Article 3 governs negotiable instruments. Like Article 3498, Section 3–118(e) also provides a five-year period, but § 3–118(e)'s period does not commence running until demand is made for payment of the CD.[4] The complaint alleges that demand was not made on the CD until 1999, which would make this action timely under § 3–118. The issue, then, is whether Article 3 applies to this CD.

### Does Article 3 Govern this CD?

Article 3498 is, by its terms, general in nature. It applies to instruments "whether negotiable or not." In contrast, Article 3 is of more limited application. It commences by stating that "[this] chapter applies to negotiable instruments." La.R.S. 10:3–102(a). Official Comment 1 explains that this language is intended to limit the scope of Article 3. Louisiana courts agree. *Pelican Plumbing Supply v. JOH Construction*, 653 So.2d 699, 701 (La.App. 5th Cir.1995) (credit agreement did not meet

definition of negotiable instrument; Article 3 did not apply) and *Capital Bank & Trust Co. v. Automotive Construction & Testing, Inc.*, 434 So.2d 1191, 1193 (La.App. 1st Cir.1983) (continuing guaranty was not a negotiable instrument so was not governed by Article 3).

The Article 3 definition of a certificate of deposit provides that: " 'Certificate of Deposit' means an *instrument* containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money." § 3–104(j) (emphasis added). *Instrument* is defined in § 3–104(b) as "a negotiable instrument." Accordingly, both the general limitation on the scope of Article 3 and the definition of certificate of deposit under Article 3 make it abundantly clear that a CD may or may not be governed by its provisions depending upon whether the CD is a negotiable instrument.

The next question is whether this CD is a negotiable instrument. A negotiable instrument is defined in § 3–104(a) as:

> an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2) is payable on demand or at a definite time; and
>
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in

---

**3.** The plaintiffs argue for the first time in a sur-reply memorandum that the doctrine of contra non valentem, based on the 1991 death of Mr. Baker, should excuse their failure to bring suit on a CD payable to Mrs. Baker within the time permitted by Article 3498. Doc. 17, p. 2. *Southern v. Bank One of Louisiana, N.A.*, 740 So.2d 775, 781 (La.App. 2d Cir.1999) (discussing the doctrine). The plaintiffs' one-paragraph argument is simply too conclusory to permit the application of the doctrine at this time.

**4.** It provides as follows: "An action to enforce the obligation of a party to a certificate of deposit to pay the instrument must be commenced within 5 years after demand for payment is made to the maker, but if the instrument states a due date and the maker is not required to pay before that date, the 5–year period begins when a demand for payment is in effect and the due date has passed."

addition to the payment of money [subject to certain inapplicable exceptions]. The "payable to bearer or order" requirement of the first subsection is further defined in Section 3–109(b), which explains that a promise "is payable to order if it is payable (i) to the order of an identified person or (ii) to an identified person or order." The CD at issue meets all of these requirements so might appear to be negotiable.

■ One must naturally ask, though, how a CD that is plainly marked "NON-TRANSFERABLE" can meet the definition of negotiable instrument. It cannot, according to § 3–104(d), a statute that the parties have not addressed. It provides:

A promise or order other than a check is not an instrument if, at the time it is issued or first comes into possession of a holder, it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable or is not an instrument governed by this Chapter.

Official Comment 3 explains that this subsection applies if, for example, a promissory note is stamped with a legend "NOT NEGOTIABLE." The effect of such a legend "is not only to negate the possibility of a holder in due course, but to prevent the writing from being a negotiable instrument for any purpose." *Id.* Accordingly, the legend "NONTRANSFERABLE" on this CD precludes it from being either *negotiable* or an *instrument* governed by Article 3, including Article 3's customer-friendly prescription rule for CD's.

Although the court has not found any Louisiana decision on point, there appears to be little question that a CD that bears a conspicuous statement that it is nontransferable is, therefore, not a negotiable instrument and not governed by Article 3. *See Estate of Isaacson,* 508 So.2d 1131 (Miss.1987) (CD's which stated that they were 'not transferable', 'not negotiable', or 'non-negotiable' were not subject to Article 3) [5]; 11 American Jurisprudence § 33, *supra,* ("an agreement between the parties that a certificate of deposit be non-negotiable, when clearly and unambiguously shown on the instrument, is valid and effective."); William D. Hawkland, *Hawkland Uniform Commercial Code Series* § 3–104:10 (Supp.1998) ("Under [§ 3–104], an instrument containing a conspicuous statement to the effect that the instrument is not negotiable is effective to remove the instrument from the coverage of Article 3."); Hawkland, supra at § 3–104:03 ("an instrument which bears a legend such as 'Non–Negotiable' is not negotiable even though it otherwise complies with section 3–104(a)."); and 58 A.L.R.4th § 632, *Effect on Negotiability of Instrument, under Terms of UCC § 3–104(1), of Statements Expressly Limiting Negotiability or Transferability* (1987).

The plaintiffs argue that Article 3 nonetheless applies. Their argument focuses upon the definition of certificate of deposit in § 3–104(j), which says that CD "means an instrument [that contains the bank's acknowledgment of receipt and promise to repay money]." The plaintiffs' interpretation of this language is that every CD is automatically an instrument and governed by Article 3 because, after all, CD "means an instrument. . . ." This interpretation is unnatural, illogical and at odds with every authority on the issue that could be found by the court. Section 3–104(j) plainly means that a CD, to be governed by Article 3, must (1) meet the legal requirements to be "an instrument" under the Article 3 definition of that term and (2) contain certain additional features. If, as the plaintiffs argue, all CD's were instruments, then they would all, given the definition of instrument, also be negotiable. Louisiana law has, however, recognized that: "Section 3–104 of Louisiana's Commercial Laws provides that a 'certificate of deposit'

---

**5.** *Isaacson* concluded that the prohibitions on transfer took the CD's outside the scope of Article 3, without even relying upon a provision such as § 3–104(d) that would lend substantial support to its conclusion.

may refer to an instrument which is not negotiable as well as to an instrument which is negotiable." *Succession of Amos*, 422 So.2d 605, 609 (La.App. 3d Cir.1982). *See also* 11 American Jurisprudence, § 33 (2d Ed.1997) ("A certificate of deposit may be negotiable or non-negotiable."

Additional support for the bank's position that prescription on a nonnegotiable CD is not governed by Article 3 is found in a Louisiana decision that addressed a closely related issue of whether the donation of a CD is governed by the general Civil Code articles on donations or the more specific provisions of Article 3 governing donations of negotiable instruments. In *Succession of Hemelt*, 523 So.2d 891 (La.App. 4th Cir.1988), the court recognized that CD's may or may not be negotiable. With respect to the status of the CD before it and the effect of negotiable status, the court stated:

> In the present case, there is no issue: the certificates of deposit themselves state that they are non-negotiable. See La.R.S. 10:3–104. As such, any donation of them is not subject to the exclusion set forth in [Article 3] from the regulations [in the Civil Code] concerning donations.

*Id.* at 893. By analogy, the CD in this case states that it is nonnegotiable, so its prescriptive period is not governed by Article 3 but by the general provisions of the Civil Code or other applicable law.

Turning to Civil Code Article 3498, this court, as did the court in *Miller v. Bank of New Orleans*, 426 So.2d 1382, 1383 (La.App. 4th Cir.1983), has found no Louisiana decision which holds that a CD is considered an instrument or note within the meaning of the article. It would, however, appear logical to apply that general code article unless another more specific limitations period is applicable (other than Article 3, none is argued) or if the plaintiffs have another cause of action that is not prescribed. As described below, the undersigned discerns from the complaint a colorable and non-prescribed cause of action for wrongful dishonor.

**Wrongful Dishonor**

The plaintiffs have not argued it, but the undersigned is of the opinion that the pleadings appear to allege the facts necessary to state a claim for wrongful dishonor under La.R.S. 10:4–402. "An action to enforce an obligation, duty, or right arising under [Article 4] must be commenced within three years after the cause of action accrues." § 4–111. That includes an action for wrongful dishonor. *Hawkland, supra* at § 4–402:06 ("The action for wrongful dishonor must be brought within three years after the cause of action accrues. The cause of action accrues when the bank dishonors the item."). The claim is not, therefore, subject to any obvious prescription defense.

■ The court need not find that the plaintiffs have stated such a claim, merely that the facts pleaded disclose a colorable claim, and the bank has not (at least yet) demonstrated that such an action is unavailable under these circumstances. A court should not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). And "the fact that a plaintiff pleads an improper legal theory does not preclude recovery under the proper theory." *Doss v. South Central Bell*, 834 F.2d 421, 424 (5th Cir.1987).

The merits of a wrongful dishonor claim are governed by § 4–402(a), which provides that "a payor bank wrongfully dishonors an item if it dishonors an item that is properly payable...." In such a case, the bank is liable to "its customer" for proximately caused damages. § 4–402(b). Of course, each of the elements of this deceptively simple looking provision are carefully defined.

■ Without going into the details, there is at least a good faith argument that

the defendant-bank is a *payor bank* as defined in § 4–105, which definition in turn requires detailed resort to provisions such as § 4–104 and § 3–103, and § 3–104. As for whether the CD is an *item*, Chapter 4 defines item broadly to mean "an instrument or a promise or order to pay money handled by a bank for collection or payment." § 4–104(a)(9) [6] The item dishonored in most situations is a check, but "[a]n 'item' within the meaning of the wrongful dishonor section is not limited to checks." 11 American Jurisprudence § 943 (2d Ed.1997). *See also, Shaw v. Union Bank & Trust Co.*, 640 P.2d 953, 954 (Ok.1981.) ("Though most commonly thought of as personal checks, an item can include bank checks, cashier's (teller's checks), notes, and non-negotiable instruments payable at the bank.") [7] The CD, then, may be an item.

To be wrongfully dishonored under § 4–402, the item must have been *properly payable*. "An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank." § 4–401(a) The CD at issue would appear to satisfy that requirement.[8]

The bank is liable only to its *customer* for damages caused by a wrongful dishonor. § 4–402(b). A customer "means a person having an *account* with the bank or for whom a bank has agreed to collect items." § 4–104(A)(5) (emphasis added). An account "means any deposit or credit account with a bank, including a demand, time, savings, pass book, share draft or like account, other than an account evidenced

by a certificate of deposit." § 4–104(A)(1). That final clause might appear to be fatal to this claim, but § 4–104(c) tells us that certificate of deposit is defined by § 3–104. Of course, for the reasons explained above, this CD does not meet the § 3–104 definition of certificate of deposit because it is not negotiable. Accordingly, it is not excluded from the Article 4 definition of account and does not preclude Ms. Baker from being a customer within the meaning of the wrongful dishonor statute.

**Conclusion**

CD's may sometimes be negotiable instruments, but it is unlikely that the average depositor thinks of them in those terms. Rather, he probably considers his CD to be similar to a receipt for money deposited in a savings account. *See Yahn & McDonnell, Inc. v. Farmers Bank*, 708 F.2d 104, 108 (3d Cir.1983). It would probably come as a surprise to most holders of nonnegotiable CD's that they will forfeit their deposited funds to the bank unless they file suit within five years after the CD's due date, even if the holder has neither made demand nor been refused payment. Yet, that will be the holding in this case if the bank prevails on its motion. Application of the wrongful dishonor statute in the manner described above may prevent the holder of a non-negotiable CD from being caught in that trap.

Once again, it is not recommended that the court hold today that the plaintiffs have pleaded an airtight wrongful dishonor claim, merely that they have pleaded sufficient facts to state a prima facie claim and survive this Rule 12(b)(6) motion. It may

---

6. The definition does, however, exclude payment orders governed by Chapter 4A and credit or debit card slips.

7. The *Shaw* decision addressed a slightly different definition of item that included "any instrument for the payment of money even though it is not negotiable but does not include money." For present purposes, there are no readily apparent grounds to distinguish that definition from Louisiana's definition.

8. Section 4–404 does permit the bank to refuse to pay a *check* that is presented more than six months after its date, but § 4–104's definition of check borrows from § 3–104, and does not appear to be applicable to this CD. Section 3–104(f) states that " 'Check' means (i) a draft, other than a documentary draft, payable on demand and drawn on a bank or (ii) a cashier's check or teller's check. An instrument may be a check even though it is described on its face by another term, such as 'money order'."

well be that a wrongful dishonor claim is subject to solid defenses or will not survive scrutiny under a more detailed examination of the relevant statutes, and the undersigned trusts that the bank will raise those defenses and arguments if they exist. And if the plaintiffs do not wish to pursue a wrongful dishonor claim, they may so advise Judge Walter in their objections and stand on their original arguments. For now, the plaintiffs' complaint should be permitted to survive.

Accordingly;

**IT IS RECOMMENDED** that the Motion to Dismiss (Doc. 6) be **DENIED.**

### *Objections*

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed.R.Civ.P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. U.S.A.A.,* 79 F.3d 1415 (5th Cir.1996) (en banc).

March 8, 2000.