WILLIAMS, J.
_JjThe defendant, Bank of Coushatta, appeals a judgment awarding the amount of $171,822.52 to the plaintiffs, Clauriste Byles and Judith Byles, for payment of a certificate of deposit. The trial court denied the defendant’s exception of prescription, For the following reasons, we affirm.
FACTS
In the Summer of 2010, while looking in a box containing various important documents, Clauriste Byles found an original certificate of deposit, No. 03-78852 (“the CD”), in the amount of $93,780.24, issued to Clauriste Byles and Judith Byles (“Byles”) by the Bank of Coushatta (“the Bank”). Typed on the face of the CD is an issue date of “November 26, 1981” and a maturity date of “May 26, 1984.” The CD provides for interest of 9.5% annually and is payable after six months upon presentar tion and surrender to the bank. The CD would be automatically renewed for another six-month period if not redeemed at the maturity date. The CD further provides that the Bank “reserves the right not to renew this certificate at the expiration of any term by mailing to the payee ... a notice of the Bank’s election not to renew this certificate.” On November 19, 2010, Byles presented the CD to the Bank for payment. The Bank declined to pay based on its records indicating that in July 1985, the CD had been redeemed by rolling over the funds into another certificate of deposit, No. 02-61231.
In April 2011, the plaintiffs, Clauriste Byles and Judith Byles, filed a petition for payment of the CD against the defendant, Bank of Coushatta. The Bank’s exception of prescription was denied and the Bank filed a writ application. This court denied the Bank’s request for supervisory review. Byles v. Bank of Coushatta, 49,326 (La.App.2d Cir.5/14/14). At trial, Byles testi- *791 fled that his wife, Judith, had purchased the CD, but that she was unable to testify because she had suffered a .stroke six years earlier. The Bank was able to produce. microfilm copies of its records from that time period. On- the Bank’s copy of the original CD, the typed dates are scratched out and the dates “December 2, 1983” and “June 2, 1984,” are written on the document. The parties presented testimony by experts who had reviewed the Bank’s records. The evidence shows that after June 1987, the Bank paid no more interest to the Byles for any certificate of deposit.
Subsequently, the trial court issued a written ruling finding that the Bank failed to satisfy its burden of proving payment of the CD presented by Byles. The court awarded plaintiffs the face amount .of the CD, $93,780.24, plus interest of $78,042,28 for the 10-year period after June 1987. The court reasoned that any additional interest would allow unjust enrichment to plaintiffs, who never informed the Bank of the lack of interest payments. The trial court rendered judgment awarding plaintiffs the amount of $171,822.52. The Bank appeals the judgment. Plaintiffs answer the appeal seeking interest for the period from the date the CD was issued until paid,
DISCUSSION
The Bank contends the trial court erred in denying its exception of prescription. The Bank argues that the plaintiffs’ claim for payment of the non-negotiable instrument has prescribed because they did not file their action within five years from June 1985, the date another CD was issued.
The prescriptive period for actions on non-negotiable instruments is |sfive years. This prescription begins to run from -the date-- payment is exigible. LSA-C.C. art. 3498. The term “exigible” is defined as a debt that is liquidated and demandable or a matured claim. Gulf Refining v. Glassell, 186 La. 190, 171 So. 846 (1936). Under Louisiana jurisprudence, payment becomes exigible and prescription begins to run from the date of demand. Miller v. Bank of New Orleans, 426 So.2d 1382 (La.App. 4 Cir.1983). The trial court’s factual findings are subject to the manifest error standard of review and will not be set aside unless clearly wrong. Ryan v. Zurich American Ins. Co., 2007-2312 (La.7/1/08), 988 So.2d 214.
In the present case, the CD provides that unless redeemed, the CD “will automatically be renewed for another period as originally issued at the rate in effect on renewal, date and will continue to be renewed automatically for like periods- if it is not so redeemed by payee at any maturity.” The Bank contends in its brief that payment on the CD became exigible on the maturity date of December 2, 1985, citing Baker v. First American National Bank, 111 F.Supp.2d 799 (W.D.La.2000). However, unlike the'CD in this case, the instrument in Baker did not automatically renew if not redeemed. Here, the CD specifically provides that if the customer did not redeem the CD. at the maturity date, then the CD renewed for another six month term until redeemed. Thus, the Bank has not shown that the Byles were required to redeem the CD at a particular maturity date. In addition, the courts have stated that prescription begins to run on the date of demand for instruments like the CD at issue. Since the Byles made a demand for payment in November 2010, their April 2011. petition was timely filed within the fiyejyear prescriptive period of Article 3498.. This assignment lacks merit.

Claim for Payment of the CD

The Bank contends the trial court erred in finding that the Bank failed to prove *792 that the CD had been paid. The Bank argues that Byles was previously paid because the documentary evidence shows that the CD was redeemed by the issuance of another CD,
A party who demands performance of an obligation must prove the existence of the obligation. A party who asserts that an obligation has been extinguished must prove the facts or acts giving rise to the extinguishment. LSA-C.C. art. 1831. Once the plaintiff meets the initial burden of establishing the existence of an obligation, the burden shifts to the defendant to come forth with sufficient evidence to rebut or cast doubt upon the plaintiffs claim. Louisiana Safety Ass’n of Timbermen Self Insurers Fund v. Malone Lumber Inc., 34,646 (La.App.2d Cir.6/20/01), 793 So.2d 218. As stated above, the trial court’s factual findings are subject to the manifest error standard of review. Ryan, supra.
In the present case, the plaintiffs’ expert, John Woody, testified that based on the bank records he reviewed he could not determine whether the CD was paid or not. Woody stated that he was unable to follow a document trail showing what happened with each CD and he did not know how many CDs had been issued to Byles. Woody testified that he did calculations showing the possibility that funds from CD 03-72001 (“CD1”) were rolled into CD 02-61231' (“CD3”) and that CD 03-73852 (“CD2”) was forgotten. Woody acknowledged that the amounts did not match exactly, but were U“very close.” Woody explained that he used a chart of interest rates for certificates of deposit for the relevant time period and added those amounts to the balance of CD1 at each renewal date, resulting in an ending balance that was quite close to the starting balance of CD3. Woody stated that he had never seen the type of unilateral change that was done on the Bank’s copy of CD2 and that such a change should have been initialed by the customer. Woody testified that the transaction tickets produced by the Bank would be part of the bank records that would show that the CD had been redeemed to purchase another CD.
The Bank’s experts, Graham Thompson and Joseph Hines, discussed the documentation produced by the Bank. Thompson testified that the Bank’s exhibit BC-5 is a transaction ticket dated 7/2/85 that refers to Byles’ customer number and to CD 73852 and shows a debit of $103,705.19, meaning that the CD balance on the Bank’s books is decreased by that amount. Thompson stated that exhibit BC-6 is a transaction ticket dated 7/2/85 and shows that $740.50 in interest, accrued for CD 73852 after renewal on 6/2/85, is being credited to the Bank. Thompson testified that exhibit BC-7 is a ticket dated 7/2/85, listing Byles’ customer number and new CD 61231 in the amount of $102,964.69, purchased with the proceeds from CD 73852, less the interest credited to the Bank. Thompson stated that CD 73852 automatically renewed in June 1985 at an interest rate of 8.75%,' but in July 1985, the interest rate for a new CD was 9%. He explained that by subtracting the month of accrued interest from 73852, the new CD could be issued as of June 2, 1985, at the higher interest rate of 9% |Ravailable in July. Thompson opined that helping the customer get a higher interest rate would be an incentive for the Bank to backdate the CD and that the higher interest would persuade Byles to change to a nonrenewable CD.
When asked about Woody’s observation that adding the applicable interest payments to the CD1 balance up to the date of CD3 results in an ending balance of CD1 that is very close to the starting balance of *793 CD3, Thompson, stated that the amounts “should be” close because the separate CDs that were issued involved similar amounts and the same interest rates would have been applied over the same length of time. Thompson acknowledged that to accept that CD1 rolled into CD2, one must assume that the date of issue typed on the original CD2 is wrong, that someone at the Bank decided to backdate the issue date of CD3 from July 2,1985 to June 2,1985, and that the Bank agreed to redeem CD2 and issue CD3 even though CD2 was not surrendered or endorsed by Byles. Thompson agreed that the best practice is for a bank to obtain an affidavit of lost instrument or an insurance bond from the customer when redeeming a CD that was not surrendered. Thompson testified that although the Bank did not have such an affidavit or insurance bond, he was surprised that the Bank was able to find the records that were produced for a transaction that occurred more than 25 years ago.
Joseph Hines, a forensic accountant, testified that the Bank’s daily transaction journal for July 2, 1985, has an entry for Byles showing a debit of $103,705.19, the amount of CD 73852, and a credit for $102,964.69; the balance of CD 61231. Hines stated that these entries show that a CD was 17removed from the Bank’s books and another CD was added, consistent with the information in the transaction tickets from that same date. Hines testified that the Bank’s CD trial balance for July 1,1985, shows that CD 73852 accrued interest at renewal on June 2, 1985, for a total amount of $103,705.19. He stated that the Bank’s “closed this date” report for the next day, July 2, 1985, shows that CD 73852 was “redeemed.” In addition, the “new accounts this date” report for the same date shows that CD 61231 was opened as of 6/2/85, in the amount of $102,964.69. Hines testified that the “year to date” trial balance report for the end of 1985 shows a zero balance for CD 73852.
Hines stated that although the date typed on CD 73852 held by Byles is November 26, 1981, the Bank’s records show the‘issue date as 12/2/83. Hines did not know who scratched out the typed date and wrote another date on the Bank’s copy of 73852. Hines testified that the Bank’s records show that CD 73852 was automatically renewed on 6/2/84, then on 12/2/84 and next on 6/2/85 at 8.75% interest. Hines stated that one month later, July 2, 1985, CD 73852 was retired and CD 61231 was issued in its place. Hines testified that even though the date change was not explained, the issue date did not affect the information on the transaction tickets, which referred to CD 73852, the same number found on Byles’ document. Hines stated that the consecutively numbered transaction tickets demonstrate there was no cash paid by Byles in that sequence of transactions. Hines testified that if the customer had paid an amount of money to buy CD 61231, then the documents involved would “bear no resemblance” to the documents in |8evidence showing the redemption of one CD for another. Based on the documents he reviewed, Hines opined that Byles received value for CD 73852 on July 2, 1985, when it was replaced by. CD 61231, with an issue date of June 2, 1985, to give Byles a new CD with a higher interest rate.
Martha Thomas, who worked as a cashier and operations, officer at the Bank, testified .that when Byles presented CD 73852 for payment, the Bank did not find any record of a current account and she was told to research the Bank’s old records. Thomas stated that she reviewed the available bank records from the 1980s that had been copied on microfilm. Thomas testified that the microfilm copy of CD 73852 has the date scratched through and *794 she did. not know if the Byles had been notified of the change. Thomas stated that the typed year 1981 on Byles’ six-month CD could not be accurate because the maturity year was 1984-and the number 78852 was consistent with the numbers of other CDs issued by the Bank in December 1983. Thomas testified that the 1985 year-end report shows CD 73852 as closed with a zero balance and CD 61231 as active. Thomas stated that the transaction tickets show that the proceeds from one CD flowed to another CD and that if Byles had presented a check to fund CD 61231, then there would be a copy of the teller’s cash ticket instead of the transaction ticket. Thomas testified that exhibit BC-14, the CD trial balance for 6/6/84, shows that CD 73852 is the only CD listed under Byles’ customer number, contradicting Woody’s theory'that CD 72001 also could have been open at the time. Thomas pointed out that exhibit BC-22, the CD trial balance for March 1982, lists only CD 72001 under Byles’ customer |flnumber and is further indication that the November 1981 date typed on Byles’ document is not correct, because CD 73852 is not listed on the Bank’s books for March 1982. Thomas testified that in addition, the" Bank’s CD trial balance report for April 1986 does not list CD 73852, but lists another CD as active - under Byles’ customer number. Thomas testified that her research of the Bank’s records demonstrates1 Byles’ pattern of having only a single CD 'active at the Bank at any given time. :
Clauriste Byles testified that he found the original CD 73852 at his home in a cabinet that also" contained carbon copies of CDs that had-been-redeemed. Byles stated that he did not have a similar copy of CD 73852. Byles testified that his wife, Judith, had done all of the banking during the 1980s and that he did not know the circumstances of how the CDs had been purchased. Byles asserted that CD 61231 could have been purchased with a check or cash and not from the proceeds of CD 73852. Byles acknowledged that he had hot produced a check or bank statement to show such a purchase. Byles testified that his wife was unable to testify about the transaction because she -had suffered a •stroke approximately six years before the trial.
In seeking payment of CD 73852, Byles established that an obligation had existed by presenting the original CD document. The Bank was then required to produce evidence to rebut the claim that payment was due on the obligation. Although the Bank produced microfilm copies of some of its records regarding CD 73852, those documents raised questions about the transaction that had occmred 25 .years before Byles presented the CD to the | inBank for payment.
The Bank’s copy of the CD showed someone had marked through the typed dates and handwritten different dates on the document. This typé of alteration, without any notation as to when, why or by whom the change was made, creates doubt that the entry was made in the ordinary course of business. Further, there was no evidence presented to show that Byles was informed of the change.
As noted by the trial court, the Bank’s primary problem in proving payment is the inability to explain why CD 73852 would have been redeemed without requiring surrender of the original document by the Byles or having them sign an affidavit of lost instrument or a release; Even though the Bank’s witnesses speculated that Mrs. Byles and the Bank could have agreed to roll over the funds from CD 73852 into a new CD without surrender of the original instrument, the Bank did not produce a witness to testify that such a situation actually occurred ■ in this case. *795 Nor did the Bank produce, an indemnity bond ot affidavit from the Byles to show that the CD was paid as a ‘‘lost” instrument. .;
The terms of the CD authorize the Bank to demand surrender' of the CD properly endorsed before • payment. However, Byles maintained possession of the original CD document at all- times and there is no endorsement. Given,the Bank’s failure to follow the procedure, meant for its protection, the trial court could have reasonably considered the lack of a release or. an-affidavit of lost instrument as evidence of nonpayment.
The trial court- heard the testimony and considered the documentary | n evidence. Based upon this record, we cannot say the trial court was clearly wrong in determining that the Bank failed to satisfy its burden'‘of proving by a preponderance of evidence the payment of the obligation represented by the original CD at issue. Thus, this assignment of error lacks merit.

Ansiver of Appellees

■ The Byles contend the trial court erred in limiting-the award of interest-to a 10-year period. The Byles' argue that they should be awarded the full amount of interest because they did not have, a duty to inform the Bank that interest had not been paid.
When no rule for a particular situation can be derived from legislation or custom, the court will proceed according to equity, resorting to justice and reason. LSA-C.C. art. 4. An obligee must make reasonable efforts to mitigate the damage caused by the obligor’s failure to perform and if the obligee fails to make these efforts, then the damages will be accordingly reduced. LSA-C.C. art. 2002. To meet the duty to mitigate a party should act as would a reasonably prudent person in similar circumstances. Akers v. Bernhard Mechanical Contractors, Inc., 48,871 (La.App.2d Cir.4/16/14), 137 So.3d 818, writs denied, 2014-1040, 2014-1100, 2014-1103 (La.9/12/14), 148 So.3d 931, 934, 935.
In their brief, the Byles contend the trial court should not have relied on equity to reduce the award of interest. We note that although the trial court mentioned Article 4, the court in effect found that the Byles failed to mitigate their loss by not inquiring about the lack of interest payments from the Bank after a period of ten years. Under circumstances similar to this 112case, if a customer had stopped receiving interest notices for a CD that was thought to be valid, at some point a reasonably. prudent person would have inquired as to, why the bank was no longer paying interest. Based upon this record, we conclude that the trial court did not err in finding that the Byles had a duty to mitigate damages and that they had failed' to do so. Consequently, under the facts" and circumstances of this case, we cannot say the trial court abused its discretion in reducing the award of interest. The assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, the trial court’s judgment is affirmed. Costs of this appeal are assessed one-half to the appellant, Bank of Coushatta, and one-half to the appellees, Clauriste and Judith Byles.
AFFIRMED.