MURPHY, Circuit Judge,
dissenting.
I dissent from the majority’s answer to the question left open by the Supreme Court in Wachovia Bank v. Schmidt, 546 U.S. 303, 317 n. 9, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006). The Court’s footnote 9 lends itself to two divergent interpretations of decisive importance in the case before this court. I respectfully suggest that the majority has followed the less supportable one. Based on the record and the well developed law in this area, I conclude that plaintiff Wells Fargo is not diverse to defendant Synoran since they are both citizens of the same state. While Wells Fargo’s main office is located in South Dakota, its principal place of business is in California. There thus being no basis for diversity jurisdiction in this case, the judgment of the district court should be vacated and the case dismissed for lack of subject matter jurisdiction.
I.
The starting point for analysis is 28 U.S.C. § 1348 which provides in relevant part: “All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.” The focus of the case before our court is on the meaning of the word “located” for purposes of diversity jurisdiction. Section 1348 traces its roots to statutes enacted in 1882 and 1887 which created jurisdictional parity between state and national banks. Act of July 12,1882, ch. 290, § 4, 22 Stat. 162, 163 (the jurisdiction of national banks “shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States”); see Act of March 3, 1887, ch. 373, § 4, 24 Stat. 552, 554-55 (national banks shall be “deemed citizens of the States in which they are respectively located”).
*716 Though the language and codification of these statutes changed slightly over time, the Supreme Court has consistently interpreted them to have placed national banks “on the same footing as the banks of the state where they were located for all the purposes of the jurisdiction of the courts of the United States.” Leather Mfrs.’ Nat’l Bank v. Cooper, 120 U.S. 778, 780, 7 S.Ct. 777, 30 L.Ed. 816 (1887); see Continental Nat’l Bank v. Buford, 191 U.S. 119, 123-24, 24 S.Ct. 54, 48 L.Ed. 119 (1903); Petri v. Commercial Nat’l Bank, 142 U.S. 644, 650-51, 12 S.Ct. 325, 35 L.Ed. 1144 (1892) (“no reason” why national banks “should not resort to federal tribunals as other corporations and individual citizens might”).
The first judicial interpretation of the word “located” in the predecessor statutes to § 1348 was done by the Ninth Circuit in American Surety Company v. Bank of California, 133 F.2d 160, 162 (9th Cir.1943). Reasoning that the citizenship of a corporation was “fixed by its principal place of business,” the court held that national banks were citizens only of the “states in which their principal places of business were maintained.” Id. Thus, at the time § 1348 was enacted in 1948: (1) the only Supreme Court decisions interpreting its predecessor statutes had ruled that a national bank’s location should be considered on a comparable basis with state banks and corporations, and (2) the only circuit court decision had explained that a national banking association was located in the state of its principal place of business.
The current provision defining the citizenship of corporations, 28 U.S.C. § 1332(c)(1), was enacted in 1958. Although that statute did not reference the national banking association provision in § 1348, the Supreme Court explained again five years later that the 1882 Act, a predecessor to § 1348, “sought to limit, with exceptions, the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks are so limited.” Mercantile Nat’l Bank v. Langdeau, 371 U.S. 555, 565, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963) (emphasis added). And fifteen years after the passage of § 1332(c)(1), our en banc court focused on the four prior judicial decisions which had recognized the congressional policy favoring jurisdictional parity for state and national banks. See Burns v. Am. Nat’l Bank & Trust Co., 479 F.2d 26, 27-30 (8th Cir.1973) (en banc). Neither the Supreme Court nor our court suggested in any way that the 1958 enactment of 28 U.S.C. § 1332(c)(1) had changed the longstanding and unanimous interpretations of § 1348 and its predecessors requiring jurisdictional parity between national and state banks.
The two leading appellate decisions addressing the exact issue before us — whether national banks are citizens of the state in which their principal place of business are located — are Firstar Bank, N.A. v. Faul, 253 F.3d 982, 985-94 (7th Cir.2001), and Horton v. Bank One, N.A., 387 F.3d 426, 429-36 (5th Cir.2004), cert. denied, 546 U.S. 1149, 126 S.Ct. 1164, 163 L.Ed.2d 1127 (2006). Both circuit courts decided that the answer was yes after thorough analyses,[8] and both decisions were referenced positively in Wachovia. See 546 U.S. at 317 n. 9, 126 S.Ct. 941. Thus, by 2004 three circuits had concluded that a national banking association is a citizen of the state of its principal place of business. See Horton, 387 F.3d at 436; Firstar, 253 *717 F.3d at 994; Am. Sur. Co., 133 F.2d at 162.
In Wachovia, the Supreme Court reaffirmed the reasoning in Firstar and Horton in the course of deciding that a national banking association is not a citizen of every state in which it maintains a branch office, but that it is at least a citizen of the state “in which its main office, as set forth in its articles of association, is located.” 546 U.S. 303, 307, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006). Specifically, the Court employed the principle of jurisdictional parity, the very principle which the majority concludes “no longer applies” and for which it finds “little support.” The Court explained that “in comparison to the access afforded state banks and other state-incorporated entities,” national banks’ access to a federal forum would be “drastically reduced” if a national bank were deemed a citizen of every state where it maintained a branch. Id. at 307, 126 S.Ct. 941; see also id. at 317, 126 S.Ct. 941.
Most significantly, in Wachovia the Court alluded to, but did not decide, the precise issue now before our court. In its footnote 9, the Court wrote that “to achieve complete parity with state banks and other state-incorporated entities,” a national banking association “would have to be deemed a citizen of both the State of its main office and the State of its principal place of business,” and it cited Firstar and Horton favorably. Id. at 317 n. 9. It acknowledged that § 1348 does not refer to a bank’s “principal place of business,” unlike § 1332(c)(1), but speculated that the “absence of a ‘principal place of business’ reference in § 1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank’s main office and of its principal place of business coincide.” Id.
Subsequently a number of district courts have faced the question before us and disagreed about whether a national bank is a citizen of the state of its principal place of business. Judge John Koeltl took a new approach to the issue in Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A., 470 F.Supp.2d 312 (S.D.N.Y.2006). Relying heavily on the fact that Congress did not amend § 1348 in 1958 at the time it enacted § 1332(c)(1), he concluded that national banks are not citizens of the state of their principal place of business. Some subsequent district court decisions have followed his line of thinking, as has the majority here. Compare Tse v. Wells Fargo Bank, N.A., No. C 10-4441 TEH, 2011 WL 175520, at *2 (N.D.Cal. Jan. 19, 2011), and DeLeon v. Wells Fargo Bank, N.A., 729 F.Supp.2d 1119, 1123-24 (N.D.Cal.2010), with Stewart v. Wachovia Mortgage Corp., No. CV 11-06108 MMM, 2011 WL 3323115, at *2-6 (C.D.Cal. Aug. 2, 2011), and Goodman v. Wells Fargo Bank, NA, No. CV 11-2685-JFW, 2011 WL 2372044, at *2 (C.D.Cal. June 1, 2011).
II.
I respectfully disagree with the majority’s framing of the issue to be whether the principle of jurisdictional parity “remained intact” after the adoption of § 1332(c)(1) in 1958. I submit that the issue is more properly viewed to be whether Wachovia undermines the longstanding and unanimous circuit precedent holding that national banks are citizens of their principal places of business. In my view, Wachovia should be construed in favor of continuing to read § 1348 in light of the preexisting policy of jurisdictional parity between national banks on the one hand and state banks and corporations on the other. Accordingly, I would hold that national banks are citizens of the state where their principal place of business is located in addition to the state in which their main office is located.
*718 In Wachovia the Supreme Court actually applied the principle of jurisdictional parity to reverse a circuit court decision that had not complied with it. The Fourth Circuit’s conclusion that national banks were citizens of every state in which they maintained a branch office was erroneous because, “in comparison to the access afforded state banks and other state-incorporated entities,” national bank access to a federal forum would be “drastically reduced.” Wachovia, 546 U.S. at 307, 126 S.Ct. 941; see also id. at 317, 126 S.Ct. 941 (“By contrast, the Court of Appeals’ decision in the instant case severely constricts national banks’ access to diversity jurisdiction as compared to the access available to corporations generally.”). If the majority were correct that the principle of jurisdictional parity in § 1348 was abrogated with the passage of § 1332(c)(1) in 1958, the Supreme Court would not have relied on that principle to decide Wachovia.
The Court suggested in footnote 9 in Wachovia that jurisdictional parity remains a salient principle. That is the closest it has come to deciding the issue now before us. The Court noted that to “achieve complete parity with state banks and other state-incorporated entities,” a national bank “would have to be deemed a citizen of both the State of its main office and the State of its principal place of business.” Id. at 317 n. 9, 126 S.Ct. 941 (emphasis added). Having just relied on that principle to decide the case before it, the Court appeared to hint that in order to achieve “complete parity,” a national bank would be a citizen of the state of its principal place of business. And the two circuit cases it cited favorably, Firstar[9] and Horton, reached that conclusion.
In view of the Court’s reliance on the principle of jurisdictional parity to decide Wachovia, footnote 9 is most fairly read to suggest that, in the rare case where a bank’s main office and principal place of business are in different states, the national bank would be “located” in both. To reach that conclusion would achieve “complete parity,” a principle that the Supreme Court linked to § 1348 and its predecessors. That would explain the Court’s citations to Firstar and Horton and its emphasis that corporations are citizens of their state of incorporation “and” the state of their principal place of business (emphasis in original). Wachovia, 546 U.S. at 317 n. 9, 126 S.Ct. 941.
The majority also overlooks a significant portion of the exchange between individual Justices and the attorney representing the Comptroller of the Currency during the arguments in Wachovia. Counsel argued that a national banking association is not a citizen of each state in which it has a branch, a position subsequently taken by the Court. In the course of his comments he also remarked that a national bank is not a citizen of the state of its principal place of business. See op. at 710; 2005 WL 3358081, at *20-21. Several Justices appeared skeptical of reading the jurisdictional statutes to limit a national bank to being a citizen of only one state. Counsel faced vigorous questioning from members of the Court on that position and twice admitted that its position was not “open and shut”:
JUSTICE STEVENS: Is it your view that a national bank may have two parallel locations or just one?
MR. SRINIVASAN: IN-it could have a main office that’s different from what *719 one would construe to be its principal place of business under the test that applies to corporations under 1332(c)[.]
MR. SRINIVASAN: Our view is that it wouldn’t be a citizen of a State simply by virtue of the fact that it has its principal place of business there. Now, I would say, though, that it’s not an open and shut case because the Court in a case that specifically raised the issue ... could construe 1332(c) ... as also applying to national banking associations[.]
JUSTICE SCALIA: And if we did — if we did interpret 1332(c) that way, there wouldn’t be any favoritism for national banks.
MR. SRINIVASAN: That’s right. It would entirely eliminate favoritism.
JUSTICE GINSBURG: But you did say 1332(c) does not apply to the national bank. It’s only one location.
Mr. SRINIVASAN: ThaW-that’s our view, but again, I’m — I wouldn’t characterize it as an — as an open and shut case[.]
2005 WL 3358081, at *29-32.
Chief Justice Roberts and Justice Scalia both appeared concerned that limiting a national bank’s citizenship to its main office would put national banks in a “favored” position. 2005 WL 3358081, at *8-9, 30. Justice Stevens questioned the logic of a rule that would allow a national bank to choose its main office in a small state removed from where it does a majority of its business. See id. at *24-26. And counsel for Wachovia Bank even conceded that § 1348 could be interpreted “to include principal place of business.” Id. at *8. Significantly, all Justices concurred in footnote 9’s acknowledgment that to achieve “complete parity” a national banking association “would have to be deemed a citizen of both the State of its main office and the State of its principal place of business.” Wachovia, 546 U.S. at 317 n. 9, 126 S.Ct. 941.
This position is also consistent with what appear to be the only widely available written positions taken by the Comptroller of the Currency on the issue now before us, see Office of the Comptroller of the Currency, Interp. Ltr. No. 952, at 6 (Oct. 23, 2002), as well as the Comptroller’s amicus brief in Horton. See 2003 WL 25953465, at *3-14. That brief remains accessible on the government’s website today. See www.occ.gov/topics/laws-regulations/
litigation/leg-proc-other-horton-vs-bankone.pdf, at 14 (last accessed Aug. 26, 2011) (“Thus, for diversity purposes a national bank should be deemed a ‘citizen’ of the state of its principal place of business and (if different), the state specified in the bank’s articles of association.”).
I also respectfully suggest that the majority has overlooked relevant circuit precedent. In Bums, the en banc court recounted § 1348’s history as embodying the principle of jurisdictional parity. See 479 F.2d at 28-29. Bums was decided in 1973, after the 1958 enactment of § 1332(c)(1), but the majority does not cite it and instead concludes that jurisdictional parity “no longer applies” because Congress did not choose to “retain” the concept in 1958. That conclusion is inconsistent with Bums’s recitation of the history of § 1348.
When § 1348 was enacted in 1948, the only appellate court to have expressly considered the issue now before us had held that a national banking association is “located” in, and therefore a citizen of, the state of its principal place of business. See Am. Sur. Co., 133 F.2d at 162. Congress is presumed to have intended that principle to carry over to § 1348. See Bragdon v. Abbott, 524 U.S. 624, 645, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998); Lorillard v. Pons, 434 U.S. 575, 580-81, 98 S.Ct. 866, 55 *720 L.Ed.2d 40 (1978), and cases cited; Firstar, 253 F.3d at 988. The majority concludes that the “most relevant time period for determining a statutory term’s meaning is the time when the statute was enacted.” Op. at 708. Yet it does not cite American Surety and even implies that principal place of business citizenship “was unknown at the time of its adoption.” Op. at 709. This is simply inaccurate, since principal place of business citizenship was a creature of the common law, and had been applied in American Surety to § 1348’s predecessor statute.
No doubt Congress could have also made § 1348 clearer in 1958 when it enacted § 1332(c)(1), but it need not have done so given the preexisting undei-standing of the statute and its predecessors which placed national and state banks on equal jurisdictional footing. Had Congress intended to abrogate the principle of jurisdictional parity in 1958, it would have been a “noteworthy departure” from established jurisdictional principles, and it “more likely than not [ ] would have plainly stated such intent” if that had been its preferred outcome. Am. Sur. Co., 133 F.2d at 162.
III.
Since I conclude that Wells Fargo is a citizen both of South Dakota and of California, its principal place of business, I would hold that it and Synoran are nondiverse parties. The case should therefore be dismissed for lack of subject matter jurisdiction.

. Both decisions also held that national banks were citizens of the state “listed in its organization certificate.” See Horton, 387 F.3d at 436; Firstar, 253 F.3d at 994. See also Wachovia, 546 U.S. at 307, 126 S.Ct. 941.

. The majority suggests that Hicklin Eng’g, L.C. v. Bartell, 439 F.3d 346, 348 (7th Cir. 2006) may have overruled Firstar. Hicklin does no such thing; it does not even mention Firstar. Although it contains dicta referencing Wachovia, Judge Flaum, the author of Firstar, was on the panel and would surely have addressed any contrary holding.